J-A29016-15

2016 PA Super 53

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| WILLIAM MITCHELL, | |
| Appellant | No. 913 WDA 2013 |

Appeal from the Judgment of Sentence November 27, 2012
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0007519-2007

BEFORE:  FORD ELLIOTT, P.J.E., BOWES AND MUSMANNO, JJ.

OPINION BY BOWES, J.:                    **FILED FEBRUARY 29, 2016**

William Mitchell appeals from the aggregate judgment of sentence of one hundred and nineteen years to two hundred and thirty-eight years imprisonment imposed by the trial court after a jury found him guilty of second-degree murder, robbery, and conspiracy to commit robbery. After careful review, we vacate Appellant's judgment of sentence and remand for resentencing, but affirm in all other respects.

Appellant, a juvenile at the time of the commission of the underlying crimes, and Lance Dempster were involved in the shooting and robbery of Boston Smithwick, a Vocelli's Pizza delivery driver. On April 19, 2007, Vocelli's Pizza in Swissvale received a delivery order for pizza and soda from an individual named Lance. That person provided a cell phone number and

asked that the order be delivered to 565 Campbell Street, Wilkinsburg. Smithwick drove to the address. Appellant, armed with a sawed-off shotgun, and Dempster attempted to rob Smithwick. Smithwick tried to grab the weapon, and was shot in the leg. The shotgun blast severed the femoral artery in his leg, causing Smithwick to bleed to death. Police later recovered a hacksaw blade with Appellant's fingerprints on it and learned from another individual that Appellant and Dempster had sawed the barrel off a shotgun on the day of the shooting.

A witness, Doreen Parker, informed police that she saw Appellant, Warren Irvin, and Dempster on the porch of 565 Campbell Street, which had been converted into an apartment building, shortly before the shooting. Ms. Parker lived in one of the apartments herself. Appellant was the son of her next door neighbor. According to Ms. Parker, Irvin was dealing drugs from the porch and the group refused to leave the porch. Ms. Parker also testified at trial that another neighbor, who lived across the street from 565 Campbell Street, and who was deceased at the time of trial, called her and told her that the pizza delivery man had been shot.

The Commonwealth charged Appellant with criminal homicide, robbery, conspiracy to commit murder and robbery, and possession of a prohibited offensive weapon. Appellant unsuccessfully litigated a pre-trial suppression motion, contending that he did not voluntarily or knowingly and intelligently waive his **Miranda** rights when he provided police with a

statement. The matter proceeded to a jury trial. The jury found Appellant guilty of second-degree murder, robbery, and conspiracy to commit robbery on April 30, 2012. The court sentenced Appellant on November 27, 2012, after the United States Supreme Court decision in ***Miller v. Alabama***, 132 S.Ct. 2455 (2012), which declared mandatory sentences of life imprisonment without parole for juvenile homicide offenders violated the Eighth Amendment. The court imposed a sentence of ninety-nine to one hundred and ninety-eight years incarceration for the felony murder crime. It also sentenced Appellant to consecutive sentences of ten to twenty years each for robbery and conspiracy to commit robbery.

Appellant timely filed a post-sentence motion. After a hearing, the court denied that motion. Appellant timely appealed. The trial court directed Appellant to file and serve a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Appellant complied, and the trial court authored its Rule 1925(a) opinion. The matter is now ready for this Court's consideration. Appellant raises seven issues for our review.

I.    Whether the Trial Court erred or, abused its discretion or had the legal authority to sentence Appellant, upon conviction of Second Degree Murder, to a period of incarceration of ninety-nine (99) to one hundred and ninety eight (198) years, effectively a life sentence, in violation of the mandates of the Supreme Court of the United States pursuant to Miller v. Alabama, 132 S.Ct. 2455 (2012) and with no sentencing provision in effect pursuant to the Pennsylvania Crimes Code on November 27, 2012 to address Appellant's unique situation?

II.    Whether the Trial Court erred or abused its discretion in sentencing Appellant to consecutive periods of ten (10) to twenty (20) years at the counts for Robbery and Conspiracy to Commit Robbery, and specifically in failing to provide a proper and sufficient statement of reasons for these sentences as required by 42 Pa.C.S. § 9721(b) and/or 204 Pa.Code § 303.1(d)?

III.   Whether the Commonwealth presented sufficient evidence to prove beyond a reasonable doubt that the Appellant committed the crimes of Murder in the Second Degree and Criminal Conspiracy to Commit Robbery?

IV.    Whether the Trial Court erred by admitting, over objection, a statement allegedly made by Diane Davidson, deceased, through the testimony of Doreen Parker, when said statement was inadmissible hearsay and not subject to the excited utterance exception to hearsay?

V.     Whether the Trial Court erred by admitting, over objection, a statement alleged to have been made by Diane Davidson, deceased, through the testimony of Detective Defelice, when said statement was inadmissible hearsay within hearsay and not subject to the excited utterance or the inconsistent statement exceptions to hearsay.

VI.    Whether the Trial Court erred in denying a pre-trial Motion to Suppress Statement, regarding statements that were made by the Appellant during a May 1, 2007 police interrogation, and allowing them to be played in court over objection, because the Appellant's waiver of Miranda and subsequent statements were not voluntary, knowing, and intelligent?

VII.   The trial court erred when denying Appellant's post-sentence motion regarding the allowance of putting before the jury the crime of Conspiracy to Commit Robbery, effectively requiring Appellant to defend on an uncharged offense after the jury was empaneled?

Appellant's brief at 9-10.

- 4 -

Appellant's initial two claims pertain to sentencing. It would, however, be unnecessary to reach these issues if Appellant is entitled to relief on any of his remaining claims. Accordingly, we will address issues three through seven before considering his sentencing claims. Further, it is settled that a sufficiency of the evidence claim entitles a person to discharge as to the crime in question. Hence, we address Appellant's sufficiency claim at the outset regardless of the order of his claims. ***Commonwealth v. Stokes***, 38 A.3d 846 (Pa.Super. 2011). Appellant argues that the Commonwealth failed to introduce sufficient evidence to prove beyond a reasonable doubt that he committed second-degree murder. He maintains that the Commonwealth did not establish that he killed Smithwick while facilitating, attempting, or committing a robbery or that he was an accomplice to the robbery that resulted in Smithwick's death. Appellant contends that it is speculation and conjecture that he possessed the shotgun during the robbery since none of the Commonwealth's witnesses testified to seeing him shoot Smithwick.

In addition, Appellant asserts that the evidence was insufficient to establish that he committed robbery or conspired to commit a robbery, thereby rendering both his second-degree murder and conspiracy to commit

robbery convictions infirm.[1]  He submits that the Commonwealth did not prove an agreement between Appellant and Dempster to rob Smithwick. Appellant posits that there was no evidence that he was aware that Dempster and his girlfriend called Vocelli's Pizza.  He argues that the Commonwealth's evidence only established his presence when Dempster "acted independently and spontaneously in robbing and shooting Smithwick[.]"  Appellant's brief at 32.

In reviewing a sufficiency claim, we consider the entirety of the evidence introduced, including improperly admitted evidence. *Commonwealth v. Watley*, 81 A.3d 108, 113 (Pa.Super. 2013) (*en banc*). We consider that evidence in a light most favorable to the Commonwealth, drawing all reasonable inferences in favor of the Commonwealth.  *Id*. The evidence "need not preclude every possibility of innocence and the fact-finder is free to believe all, part, or none of the evidence presented."  *Id*. Only where "the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances[,]" is a defendant entitled to relief.  *Id*.  We do not "re-weigh the evidence and substitute our judgment for that of the fact-finder."  *Id*. As the question of the sufficiency of the evidence is one of law, we consider

_____

[1]  Appellant does not distinguish between the separate and distinct concepts of accomplice and conspiratorial liability.  *See Commonwealth v. Roebuck*, 32 A.3d 613 (Pa. 2011) (highlighting differences between the two vicarious liability standards).

the evidence *de novo*. **Commonwealth v. Sanchez**, 36 A.3d 24, 37 (Pa. 2011).

Second-degree murder, commonly known as felony murder in Pennsylvania, requires a homicide committed while the "defendant was engaged as a principal or an accomplice in the perpetration of a felony." 18 Pa.C.S. § 2502(b). The Crimes Code further defines the perpetration of a felony, relevant herein, as, "[t]he act of the defendant in engaging in or being an accomplice in the commission of, or an attempt to commit, or flight after committing, or attempting to commit robbery[.]" 18 Pa.C.S. § 2502(d).[2] The General Assembly has further provided that,

> A person is an accomplice of another person in the commission of an offense if:

---

[2] The Crimes Code does not expressly set forth that one can be found guilty of second-degree murder as a conspirator. Other jurisdictions have determined that one cannot conspire to commit felony murder. **Evanchyk v. Stewart**, 340 F.3d 933, 939-40 (9th Cir. 2003) (holding that, under Arizona law, one cannot conspire to commit felony murder); **see also Evanchyk v. Stewart**, 47 P.3d 1114, 1119 (Ariz. 2002); **State v. Wilson**, 30 Kan.App.2d 498, 43 P.3d 851, 853-54 (2002) (opining that Kansas does not recognize the crime of conspiracy to commit felony murder because conspiracy requires a specific intent). This Court has also repeatedly noted that one cannot attempt to commit felony murder because an attempt is a specific intent crime, as is conspiracy. **Commonwealth v. Spells**, 612 A.2d 458, 460 n. 5 (Pa.Super. 1992); **Commonwealth v. Griffin**, 456 A.2d 171, 177 (Pa.Super. 1983). We note, however, that our Supreme Court has concluded that one can conspire to commit third-degree murder, which does not require proof of a specific intent to kill. **Commonwealth v. Fisher**, 80 A.3d 1186 (Pa. 2013).

> (1) with the intent of promoting or facilitating the commission of the offense, he:
>
>> (i) solicits such other person to commit it; or
>>
>> (ii) aids or agrees or attempts to aid such other person in planning or committing it; or
>
> (2) his conduct is expressly declared by law to establish his complicity.
>
> (d) Culpability of accomplice. --
>
> When causing a particular result is an element of an offense, an accomplice in the conduct causing such result is an accomplice in the commission of that offense, if he acts with the kind of culpability, if any, with respect to that result that is sufficient for the commission of the offense.

18 Pa.C.S. § 306(c)-(d). Accomplice liability "may be established wholly by circumstantial evidence. Only 'the least degree of concert or collusion in the commission of the offense is sufficient to sustain a finding of responsibility as an accomplice.' No agreement is required, only aid." *Commonwealth v. Knox*, 50 A.3d 732, 739 (Pa.Super. 2012). Thus, Appellant could have been found guilty of second-degree murder based on the jury finding that Appellant aided in the robbery that resulted in Smithwick's death without establishing a conspiracy to commit that robbery. Accordingly, Appellant's argument that the Commonwealth failed to prove a conspiracy to commit robbery is immaterial to our sufficiency review for purposes of Appellant's felony murder conviction.

With respect to the charges of robbery and conspiracy to commit robbery, Appellant was charged with robbery under 18 Pa.C.S. § 3701(a)(1)(i) and (ii). Under those provisions, a person is guilty of robbery, "if, in the course of committing a theft, he: (i) inflicts serious bodily injury upon another; (ii) threatens another with or intentionally puts him in fear of immediate serious bodily injury[.]" 18 Pa.C.S. § 3701(a)(1)(i)-(ii). A defendant also may be guilty of robbery as an accomplice or co-conspirator as long as the defendant possessed the requisite *mens rea* to commit the criminal act and the additional elements of accomplice liability or conspiratorial liability are established. We have previously outlined the definition of an accomplice. A person is a conspirator if "the defendant: 1) entered into an agreement to commit or aid in an unlawful act with another person or persons; 2) with a shared criminal intent; and 3) an overt act was done in furtherance of the conspiracy." *Commonwealth v. Devine*, 26 A.3d 1139, 1147 (Pa.Super. 2011).

In *Commonwealth v. Lambert*, 795 A.2d 1010 (Pa.Super. 2002), this Court set forth four factors to consider in deciding if a conspiracy existed. Those factors were: "(1) an association between alleged conspirators; (2) knowledge of the commission of the crime; (3) presence at the scene of the crime; and (4) in some situations, participation in the object of the conspiracy." *Id*. at 1016. A "conspiratorial agreement can be inferred from a variety of circumstances including, but not limited to, the relation

between the parties, knowledge of and participation in the crime, and the circumstances and conduct of the parties surrounding the criminal episode." *Commonwealth v. Feliciano*, 67 A.3d 19, 26 (Pa.Super. 2013) (*en banc*). "The conduct of the parties and the circumstances surrounding such conduct may create a web of evidence linking the accused to the alleged conspiracy beyond a reasonable doubt." *Id*. (quoting *Devine*, *supra* at 1147). A person guilty of robbery as a co-conspirator is necessarily guilty of conspiracy to commit robbery.

The Commonwealth posits that the following evidence is sufficient to establish second-degree murder and conspiracy to commit robbery. Dempster and his girlfriend telephoned several local pizza shops before Dempster ordered pizza and a two-liter of soda from Vocelli's in Swissvale.[3] He gave the address of the delivery as 565 Campbell Street in Wilkinsburg. Dempster's girlfriend testified that she knew that Dempster intended to rob a pizza delivery man. A resident of the 565 Campbell Street address, Ms. Parker observed Dempster, Appellant, and Warren Irvin sitting on the porch at that address shortly before Smithwick, Vocelli's pizza delivery person, arrived. The Commonwealth introduced evidence that Appellant, Dempster, and Irvin sawed off the barrel of a shotgun with a hacksaw in an abandoned house several doors down from 565 Campbell Street earlier that same day.

_____

[3] The calls were three-way calls.

Police recovered a hacksaw blade with Appellant's fingerprints on it. Appellant admitted to police that he did saw off a gun barrel, but denied being involved in the robbery and shooting.

Irvin testified that although he did not see the shooting, he observed Appellant and Dempster hiding in the bushes when Smithwick arrived at 565 Campbell Street. The Commonwealth introduced evidence that Appellant and Dempster then confronted Smithwick armed with a shotgun. Specifically, Irvin acknowledged hearing the shotgun being cocked, and asserted that he ran away as Smithwick ran toward Appellant, before he heard a shot fired. Shortly thereafter, police arrived to find Smithwick shot.

These facts, viewed in a light most favorable to the Commonwealth, establish beyond a reasonable doubt that Appellant is guilty of second-degree murder, robbery, and conspiracy to commit robbery. Appellant's claim that he was merely present at the scene ignores our standard of review. The evidence establishes that Appellant both aided Dempster in the robbery and agreed to take part in the robbery. Here, Appellant and Dempster attempted to hold up and rob Smithwick. In the process of this robbery, Smithwick was shot and killed. Appellant's sufficiency claims are devoid of merit.

Appellant's next two claims are that the trial court erred in admitting into evidence a statement by a deceased witness, Diane Davidson. Evidentiary rulings are governed by an abuse of discretion standard.

***Commonwealth v. Moser***, 999 A.2d 602 (Pa.Super. 2010). First, Appellant attacks the admission of Davidson's statement through Doreen Parker. Appellant contends that the statement was inadmissible hearsay and did not fall within the ambit of the excited utterance exception to hearsay. The relevant testimony is as follows.[4]

> Prosecutor: What did she tell you?
>
> Ms. Parker: She told me that the pizza man was laying on the ground.
>
> Prosecutor: What exactly did she say to you?
>
> Ms. Parker: Doreen, I'm calling the police, too. Somebody shot the pizza man. He is laying on the ground.
>
> Prosecutor: Doreen, do you remember speaking to myself and Detective DeFelice last week?
>
> Ms. Parker: Yes, that was April 17th.
>
> Prosecutor: Right.
>
> Ms. Parker: Yes.
>
> Prosecutor: Do you remember what you told us Diane told you?
>
> Ms. Parker: She just told me he had been shot.
>
> Prosecutor: Would it help you remember if I showed you your report?

_____

[4] Appellant objected to Ms. Parker being permitted to testify as to statements made to her by Ms. Davidson prior to Ms. Parker's testimony. The Commonwealth invoked the excited utterance exception and Appellant argued that Ms. Davidson's statement to Ms. Parker did not sufficiently evince that Ms. Davidson observed the shooting. The trial court overruled the objection. Appellant again objected immediately before the testimony.

Ms. Parker: Yes.[5]

. . . .

Prosecutor: I'm going to show you this report. Tell me if it refreshes your memory. Read it to yourself as to what Diane told you, okay. Did you read this paragraph?

Ms. Parker: Yes.

Prosecutor: Does that refresh your recollection as to what you told the detective exactly what Diane told you on the phone?

Ms. Parker: Yes.

Prosecutor: What did Diane tell you on the phone?

Ms. Parker: He shot the pizza man.

Prosecutor: Who shot the pizza man?

Ms. Parker: She didn't know who.

Prosecutor: What was the word she used?

[objection overruled]

Prosecutor: Ms. Parker, would it help you to read the report again? Read this report to yourself beginning with Davidson stated to Parker.

Ms. Parker: This is what she told me.

Prosecutor: Does that refresh your memory as to what she told you?

Ms. Parker: Yeah.

_____

5   Appellant raised an objection and the court allowed the prosecution to proceed in order to refresh the witness' recollection.

Prosecutor: What did she say to you exactly?

Ms. Parker: This.

Prosecutor: You have to testify to it. What did she tell you?

Ms. Parker: She said he shot the pizza man.

Prosecutor: Exactly what did she tell you?

Ms. Parker: I'm calling 911. He is laying out on the ground on the sidewalk and the curb. She could see better than me.

Prosecutor: Did she say who shot him?

Ms. Parker: No.

Prosecutor: How did she describe who shot him?

Ms. Parker: She really didn't. She was scared.

Prosecutor: Did she say gender?

Ms. Parker: She knew it was a male.

Prosecutor: The people that shot the pizza man, Ms. Parker, did Diane say what gender they were?

Ms. Parker: No.

Prosecutor: She didn't describe them as men or women?

Ms. Parker: We already knew who it was out there.

Prosecutor: She didn't describe anybody. She just said they shot him.

N.T., 4/25/12, 99-103. Appellant argues that Ms. Davidson's statement to Ms. Parker does not indicate that Ms. Davidson witnessed the shooting.

The Commonwealth rejoins that the context of the statement is sufficient to establish that Ms. Davidson saw the shooting. It adds that a

shooting is a startling event and that Ms. Davidson made her statements to Ms. Parker within seconds to three minutes of the shooting. Thus, it posits that Ms. Davidson's statement was an excited utterance and admissible.

We agree. The entire context of Ms. Davidson's statements to Ms. Parker indicate that she witnessed the shooting. Appellant does not dispute that a shooting is a startling event. The trial court did not err in allowing Ms. Parker's testimony regarding Ms. Davidson's statements. ***See Commonwealth v. Douglas***, 737 A.2d 1188, 1195 (Pa. 1999) (unavailable witness' statement provided after seeing a shooting was admissible as an excited utterance); ***Commonwealth v. Washington***, 692 A.2d 1018, 1022 (Pa. 1997).

Relatedly, Appellant asserts that the trial court erred in permitting Detective DeFelice to read into evidence Ms. Parker's statement to him recounting what Ms. Davidson told her. Appellant contends that this testimony was double hearsay not falling within any recognized exception to the bar against such evidence. Specifically, over objection, the prosecution asked Detective DeFelice, "what did Ms. Parker say that Ms. Davidson told her?" N.T., 4/25/12, at 118. Detective DeFelice answered, "Them boys shot the pizza delivery man. Now he is laying out there on the curb." ***Id***. at 119.

The trial court permitted the testimony based on the Commonwealth's argument that the statement read by Detective DeFelice was an inconsistent prior statement to Ms. Parker's in-court testimony related above. Appellant

argues that the trial court failed to appreciate the distinction between an inconsistent statement and one that is merely dissimilar. Appellant's brief at 40 (citing **McManamon v. Washko**, 906 A.2d 1259, 1268 (Pa.Super. 2006) (quoting **Commonwealth v. Bailey**, 469 A.2d 604, 611 (Pa.Super. 1983))). He points out that Ms. Parker stated that Ms. Davidson said, "Somebody shot the pizza man," and that this declaration is not inconsistent with "Them boys shot the pizza man." In addition, we are cognizant that Ms. Parker repeatedly stated that Ms. Davidson told her that "he shot the pizza man[,]" although at one point she said that Ms. Davidson did not say what gender they were.

We find that the court erred in permitting Detective DeFelice to testify as to what Ms. Parker relayed to him regarding Ms. Davidson. The difference between Ms. Parker's testimony is not, when considered in context, inconsistent with, "Them boys shot the pizza man." N.T., 4/25/12, at 119. Although Ms. Parker did state that Ms. Davidson did not describe the assailants, she acknowledged that Ms. Davidson knew it was men who robbed the victim.[6] Viewed in its entirety, the testimony related above was

_____

[6] The Commonwealth in its brief does not contend that this was the inconsistency. Rather, it asserts that the statement "he shot the pizza man" is inconsistent with "Them boys shot the pizza man[,]" because the latter quote indicates that more than one person was involved. Commonwealth's brief at 33.

- 16 -

consistent. Nonetheless, we agree with the Commonwealth's argument that the error was harmless.

Harmless error exists if there is no reasonable possibility that the error could have contributed to the verdict. **Commonwealth v. Green**, 76 A.3d 575, 583 (Pa.Super. 2013). In this respect, an error is harmless if it

> did not prejudice the defendant or the prejudice was *de minimis*; or (2) the erroneously admitted evidence was merely cumulative of other untainted evidence which was substantially similar to the erroneously admitted evidence; or (3) the properly admitted and uncontradicted evidence of guilt was so overwhelming and the prejudicial effect of the error so insignificant by comparison that the error could not have contributed to the verdict.

*Id*. Here, the evidence was merely cumulative of properly admitted evidence. Appellant is not entitled to a new trial on this basis.

Appellant's next contention is that the trial court erred in denying his suppression motion. We consider an order denying a motion to suppress by reviewing the evidence of the Commonwealth's witnesses, and the uncontradicted evidence presented by the defendant. **In re T.B.**, 11 A.3d 500, 505 (Pa.Super. 2010). Where the factual findings of the court are supported by that evidence, we are bound by those findings. *Id*. However, the suppression court's legal conclusions are not binding. *Id*. The question of whether a confession is constitutionally admissible is one of law. *Id*. We evaluate Appellant's waiver considering the totality of the circumstances.

The Commonwealth was required to prove by a preponderance of the evidence that Appellant's **Miranda** waiver was constitutionally valid. *Id*.

This "inquiry has two distinct dimensions." *Id*. First, Appellant must have voluntarily waived his right to remain silent. This Court has opined that a voluntary waiver is one that is "the product of a free and deliberate choice rather than intimidation, coercion or deception." *Id*. In addition, a person must be fully aware "of the nature of the right being abandoned and the consequences of the decision to abandon it." *Id*.

When the *Miranda* waiver is performed by a juvenile, we have set forth that we consider the juvenile's age, experience, comprehension, the presence or absence of an interested adult, the duration and means of the interrogation, the juvenile's physical and psychological state, the conditions attendant to the detention, the attitude of the official conducting the interview, and any other factors that might drain a juvenile's ability to withstand coercion and suggestion. *Id*. at 506.

Appellant maintains that his *Miranda* waiver was not knowing, intelligent, and voluntary because the adult present for his statement was not an interested adult. Appellant's uncle, with the consent of Appellant and Appellant's mother, was present when Appellant spoke with police. Appellant argues, however, that because his uncle cooperated with police, he had a conflict of interest. According to Appellant, his uncle, Harry Mitchell, previously provided police with information that incriminated Appellant. Appellant submits that his lack of experience with police

interrogation, combined with the lack of an interested adult being present, resulted in his waiver being invalid.

The Commonwealth responds by initially setting forth that Appellant did not confess to the crime. Rather, Appellant denied involvement in the robbery and shooting, although he did admit to taking part in sawing off a shotgun. It continues by highlighting that Appellant voluntarily turned himself into police with his mother and uncle on May 1, 2007. The Commonwealth does acknowledge that Appellant's uncle was interviewed on April 20 and April 26, 2007. In the later interview, Appellant's uncle informed police that Appellant was back in town or available for questioning. Appellant's uncle thereafter helped to facilitate Appellant turning himself in to police.

When Appellant arrived at the Allegheny County Homicide headquarters, he was told that he was under arrest for homicide. He, his mother, and uncle were taken into a conference room. Appellant was not handcuffed at that time. After initially indicating that he did not wish to speak with police, Appellant informed a sergeant that he was willing to discuss the matter with police but not with his mother present. The sergeant spoke with Appellant's mother about Appellant being more comfortable talking with police without her being in the room. Appellant, his mother, and uncle then were permitted to speak together. Appellant's mother agreed to allow Appellant to speak with police but asked that

Appellant's uncle be present. Police agreed and then informed Appellant of his *Miranda* rights in the presence of both his mother and uncle. Appellant answered questions on the *Miranda* waiver form, waiving his rights. Appellant, his mother, and Appellant's uncle, each signed the form. At that point, Appellant's mother exited the conference room. Appellant's uncle did not ask any questions and Appellant was permitted to speak uninterrupted. The police did not discuss the April 20 and April 26 interviews with Appellant's uncle, but the interview ended after Appellant told police that he did not wish to speak with them after they began to ask questions.

There is no evidence in the suppression record that Appellant's uncle had a conflict of interest. The evidence only indicates that he spoke with police, helped facilitate Appellant turning himself in voluntarily, and had told Appellant that he had talked with police previously. The totality of the circumstances evinces a sound waiver. Appellant was informed of his rights in the presence of both his mother and his uncle. Appellant, along with both adults, signed a *Miranda* waiver form, after Appellant completed answering that form. Appellant was not handcuffed, there is no evidence of intimidation, nor was the interview conducted at an unreasonable hour or for an extended period. Appellant's claim is meritless.

Appellant's final issue is that the trial court erred in denying the claim in his post-sentence motion that the court erred in putting before the jury the crime of conspiracy to commit robbery because that crime was not

included in the criminal information. This claim is frivolous and belied by the record. In count two of the criminal information, the Commonwealth charged Appellant with robbery. In count three, the Commonwealth expressly delineated that Appellant,

> with the intent of promoting or facilitating the crime(s) charged above, conspired and agreed with Lance Dempster that they or one or more of them would engage in conduct constituting such crime(s) or attempt or solicitation to commit such crime(s), and in furtherance thereof did as a principal or an accomplice, commit one or more of the following overt acts: shooting the victim, Boston Smithwick, Jr.

**See** Criminal Information at 1, count 3. Thus, the criminal information referred to the crime of robbery charged in count two in setting forth the conspiracy offense. Appellant is entitled to no relief.[7]

Having disposed of Appellant's claims pertaining to his trial, we now consider his sentencing challenges. Appellant's initial sentencing issue is that he was illegally sentenced to the equivalent of a life sentence without parole based on **Miller v. Alabama**, **supra**. The Commonwealth agrees that Appellant is entitled to resentencing on this basis and the trial court in its opinion acknowledged that its sentence was unlawful. Instantly,

---

[7] We caution counsel against advancing claims that are patently contradicted by the record. Further, we add that trial counsel did not object to the criminal information being inadequate prior to trial or to the Commonwealth proceeding on a theory at trial that Appellant conspired to commit robbery, nor did counsel object to the court instructing the jury on that crime. Only at sentencing did Appellant object to the criminal information regarding the conspiracy count.

Appellant was found guilty on April 30, 2012, and sentenced on November 27, 2012. The **Miller** decision was decided on June 24, 2012. **Miller** held that mandatory sentences of life imprisonment without parole for juvenile homicide offenders violate the Eighth Amendment. Accordingly, Pennsylvania's mandatory sentencing structure for juvenile homicide defendants was rendered unconstitutional. After Appellant was sentenced, the General Assembly passed sentencing legislation to address the **Miller** case. **See** 18 Pa.C.S. § 1102.1 (effective October 25, 2012). However, that statute does not apply to Appellant. **Id**.; **see also Commonwealth v. Batts**, 66 A.3d 286 (Pa. 2013) (citing **Commonwealth v. Lofton**, 57 A.3d 1270, 1272 (Pa.Super. 2012)).[8]

While Appellant was not sentenced under a mandatory sentencing scheme, the sentencing court did not state that it considered various factors

_____

[8] Contrary to Appellant's argument at sentencing, there did exist statutory authority to sentence him. Specifically, under the then-applicable version of 18 Pa.C.S. § 1102(b), Appellant was to be given life imprisonment. However, that statute's interplay with 61 Pa.C.S. § 6137(a), which mandated no opportunity for parole, was no longer constitutionally sound. Thus, Appellant should have been provided the opportunity for parole during his life sentence. **See Commonwealth v. Batts**, 66 A.3d 286 (Pa. 2013) (discussing sentencing for juvenile found guilty of first-degree murder in light of **Miller v. Alabama**, 132 S.Ct. 2455 (2012)). Admittedly, there was no express statutory provision setting forth a specific time in which a juvenile homicide defendant in Appellant's situation would be eligible for parole. Our Supreme Court in **Batts** expressly rejected the argument that a juvenile homicide defendant could only be sentenced to a term of years of twenty to forty years incarceration or that a trial court was without authority to impose a life sentence with a term of parole for those found guilty of first-degree murder.

that both this Court and our Supreme Court have set forth for sentencing those juvenile homicide offenders who did not come within the ambit of 18 Pa.C.S. § 1102.1. *See Knox*, *supra* at 745; *Lofton*, *supra*; *see also Batts*, *supra* 296 (internal citations omitted) ("*Miller* neither barred imposition of a life-without-parole sentence on a juvenile categorically nor indicated that a life sentence with the possibility of parole could never be mandatorily imposed on a juvenile. Rather, *Miller* requires only that there be judicial consideration of the appropriate age-related factors set forth in that decision prior to the imposition of a sentence of life imprisonment without the possibility of parole on a juvenile."). Accordingly, we vacate Appellant's judgment of sentence and remand for re-sentencing consistent with the aforementioned decisions. Since we are vacating Appellant's judgment of sentence on this ground, we need not reach his second sentencing issue.

Judgment of sentence vacated. Case remanded for re-sentencing. Jurisdiction relinquished.

J-A29016-15

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 2/29/2016