J-S56014-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| ERIC DANIEL CAMACHO-RODRIGUEZ, | |
| Appellant | No. 1712 MDA 2015 |

Appeal from the Judgment of Sentence Entered July 31, 2013
In the Court of Common Pleas of York County
Criminal Division at No(s): CP-67-CR-0006998-2012

BEFORE:  BENDER, P.J.E., PANELLA, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY BENDER, P.J.E.:          **FILED SEPTEMBER 29, 2016**

Appellant, Eric Daniel Camacho-Rodriguez, appeals from the judgment of sentence of life imprisonment, imposed after he was convicted of second degree murder, 18 Pa.C.S. § 2502(b), and related offenses.  On appeal, Appellant challenges the sufficiency of the evidence to support his conviction of second degree murder.  We affirm.

Appellant's convictions stemmed from his participation in an attempted robbery, during which his co-defendant, Emanuel Rivera, killed Felipe Bernabe-Martinez.  Following a jury trial from June 3, 2013 through June 7, 2013, the jury found Appellant guilty of second degree murder, criminal

_____

[*] Former Justice specially assigned to the Superior Court.

conspiracy to commit robbery, and criminal conspiracy to commit burglary.[1]

After his sentencing, Appellant filed a post-sentence motion, which the trial

court denied on August 28, 2013. Appellant subsequently filed a direct

appeal to this Court, which we dismissed on June 10, 2014, because

Appellant's counsel did not file a brief.

Thereafter, Appellant filed a Post Conviction Relief Act (PCRA)

petition,[2] in which he alleged ineffective assistance of counsel, among other

claims. A hearing on Appellant's PCRA petition took place on September 29,

2015, and the court reinstated Appellant's appellate rights. Appellant

thereafter filed a notice of appeal and a timely, Pa.R.A.P. 1925(b) concise

statement of errors complained of on appeal. In his appellate brief,

Appellant presents a single issue for our review:

> I. Did the trial court err in holding that the Commonwealth presented sufficient evidence to support the verdict of murder in the second degree?

Appellant's Brief at 4 (suggested answer omitted).

Initially, we set forth our standard of review:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient

---

[1] As explained *infra*, Appellant's convictions of criminal conspiracy to commit robbery and criminal conspiracy to commit burglary were in connection with a plan to commit a separate home invasion on May 31, 2012, just days after the murder of Bernabe-Martinez.

[2] 42 Pa.C.S. §§ 9541-9546.

evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the [trier] of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Hansley*, 24 A.3d 410, 416 (Pa. Super. 2011) (internal citations omitted).

Appellant contests the sufficiency of the evidence in relation to his conviction of second degree murder. Second degree murder is defined by statute as "[a] criminal homicide … committed while defendant was engaged as a principal or an accomplice in the perpetration of a felony." 18 Pa.C.S. § 2502(b). "Perpetration of a felony" is defined as "[t]he act of the defendant in engaging in or being an accomplice in the commission of, or an attempt to commit, or flight after committing, or attempting to commit robbery, rape, or deviate sexual intercourse by force or threat of force, arson, burglary or kidnapping." 18 Pa.C.S. § 2502(d). Specifically, "[a] person is guilty of robbery if, in the course of committing a theft, he … inflicts serious bodily injury upon another[.]" 18 Pa.C.S. § 3701(a)(1)(i).

Additionally, "[a] person is legally accountable for the conduct of another person when … he is an accomplice of such other person in the commission of the offense." 18 Pa.C.S. § 306(b)(3). The statute sets forth that "[a] person is an accomplice of another person in the commission of an offense if … with the intent of promoting or facilitating the commission of the offense, he … aids or agrees or attempts to aid such other person in planning or committing it." 18 Pa.C.S. § 306(c)(1)(ii).

> This Court has explained,
>
> To establish complicity, mere presence at the scene of a crime and knowledge of the commission of criminal acts is not sufficient. Nor is flight from the scene of a crime, without more, enough. However, those factors combined, along with other direct or circumstantial evidence may provide a sufficient basis for a conviction, provided the conviction is predicated upon more than mere suspicion or conjecture.

*Commonwealth v. Rosetti*, 469 A.2d 1121, 1123 (Pa. Super. 1983) (citations omitted). Moreover, "[a]ccomplice liability may be established wholly by circumstantial evidence. Only the least degree of concert or collusion in the commission of the offense is sufficient to sustain a finding of responsibility as an accomplice. No agreement is required, only aid." *Commonwealth v. Mitchell*, 135 A.3d 1097, 1102 (Pa. Super. 2016) (internal citations and quotations omitted).

In the case *sub judice*, the trial court summarized the totality of evidence presented at Appellant's jury trial as follows:

> [T]he jury found Appellant responsible for the shooting death of Bernabe-Martinez on May 28, 2012, following several days of testimony. In support of the Commonwealth's case,

Linda Perez testified that she was sitting on her front porch with a friend, Nick Drayden, across the street from where the murder occurred. Perez and Drayden witnessed two males walking through the park, and the two males confronted and argued with the victim, Bernabe-Martinez. Perez testified that she heard a gunshot and saw the two males running from the scene. Another witness, Karen Ferguson[,] was in the park on May 28, 2012, and testified that she saw a male matching Appellant's description sitting on a park bench, which was located across the street from Bernabe-Martinez's home. The jury was free [to] weigh the witnesses['] credibility and to give their testimony any weight they deemed appropriate during deliberation.

The Commonwealth also called the confidential informant in the case, Jaycott Rivera-Rodriguez, who testified that Appellant and [c]o-[d]efendant Rivera arrived at his home on May 31, 2012, to discuss committing a separate home invasion in Harrisburg. Rivera-Rodriguez testified that during this discussion, Appellant stated that he was present when Rivera pulled the trigger, killing Bernabe-Martinez on May 28, 2012. Rivera-Rodriguez then convinced Appellant and Rivera to commit the separate home invasion in York instead of going to Harrisburg. In the course of planning this home invasion, Rivera-Rodriguez testified that Appellant grabbed a backpack, which contained the gun that Appellant and Rivera used in Bernabe-Martinez's murder. Further, the Commonwealth called Detective [Andy] Baez, who interviewed [c]o-[d]efendant Rivera. Detective Baez testified that during an interview, Rivera confessed to shooting Bernabe-Martinez.

The confidential informant, Rivera-Rodriguez[,] was in contact with the police when police were preparing to apprehend Appellant and Rivera. When the police moved in to apprehend Appellant, Officer [Clayton] Glatfelter testified that Appellant discarded the backpack containing the gun near the woods as Appellant fled. After Appellant was taken into custody, Detective [Jeremy] Mayer testified that the backpack was recovered and contained the same gun and some ammunition.

In order to link the gun Appellant discarded to [the shooting of] Bernabe-Martinez, the Commonwealth called Dr. Samuel Land, who performed the victim's autopsy. Dr. Land testified that Bernabe-Martinez sustained a contact gunshot wound to the right lower back, which indicated that the gun was pressed up against the victim's skin when the trigger was pulled.

The Commonwealth also called Katherine Cross[,] the DNA technical leader and forensic biologist at Guardian Forensic Sciences, who testified that DNA on the swab she received from the gun barrel matched Bernabe-Martinez's DNA.

Trial Court Opinion (TCO), 11/6/15, at 4-6 (footnotes omitted).

In his brief, Appellant "argues the Commonwealth failed to establish that [] Appellant acted as the principal or accomplice in the perpetration of a felony, to wit an attempted robbery of the victim." Appellant's Brief at 9. Specifically, Appellant contends that the Commonwealth's evidence that "Rivera shot and killed Bernabe-Martinez, that the Appellant was present when the murder occurred, that the Appellant fled the scene after the murder, and that [] Appellant told Rivera-Rodriguez that he was present when [] Rivera murdered Bernabe-Martinez" does not establish that Appellant acted as an accomplice in the attempted robbery. *See id.* at 10-11. We disagree.

At trial, there was ample testimony from witnesses to demonstrate that Appellant acted as an accomplice in the attempted robbery of Bernabe-Martinez. For instance, Ms. Perez, the woman sitting on her porch across the street from where the murder occurred, testified:

> [The Commonwealth]: [] Now, you said that you noticed them[, Appellant and Rivera,][3] walking and -- in the park. Where did they go?

_____

[3] We acknowledge that Ms. Perez did not explicitly identify Appellant in court; however, her description of one of the men involved in the attempted robbery matches the appearance of Appellant and conforms to various other
*(Footnote Continued Next Page)*

[Ms. Perez]: They walked towards the gentleman that was shot. He pulled up in his car and they were walking towards him. []

[The Commonwealth]: Now, did they walk straight to this gentleman or were they -- as far as the two gentlemen in the park, did they go directly to him or did they take another route or were you able --

[Ms. Perez]: No, they walked towards him.

[The Commonwealth]: Okay. And were you able to observe what occurred when they approached him?

[Ms. Perez]: I don't know what they were actually saying to him, but, at first, it looked like they were just talking to him and then all of a sudden *they started fighting and they were pushing him up against the metal trailer thing or whatever.* And then I turned around for I want to say a second and looked at my friend and then that's when I heard the gunshots.

[The Commonwealth]: Okay. Now, when you say they started fighting, *was it both gentlemen fighting with the man…*

[Ms. Perez]: *Yes, correct.*

[The Commonwealth]: They were *both involved in that fight*?

[Ms. Perez]: *Yes*.

N.T. Jury Trial, at 165-66 (emphasis added).

Further, Mr. Drayden, who was on the porch with Ms. Perez when the murder occurred, stated:

[The Commonwealth]: [] So the two guys that came across the park[, Appellant and Rivera,] and the guy in the work truck, they were the ones involved in a commotion?

[Mr. Drayden]: Yes.

*(Footnote Continued)* ⎯⎯⎯⎯⎯⎯⎯⎯⎯

witnesses' descriptions. **See** N.T. Jury Trial, 6/3/13-6/7/13, at 163-64, 180-82, 210-11, 556-57. Further, as stated *infra*, Appellant told Mr. Rivera-Rodriguez that he was present when the attempted robbery occurred.

\*\*\*

[Attorney for Rivera]: [] And how long was it from when you got out of your car until this tussle, commotion started?

[Mr. Drayden]: About probably like a few seconds because it was like kind of talking, but I don't speak Spanish so I wouldn't understand.

[Attorney for Rivera]: And when you say kind of talking, were these two individuals that you saw up at this truck talking with --

[Mr. Drayden]: He wasn't talking with him. *Like one was in the front of him and one was in the back of him. That's why I said it looked like the guy is about to get jammed.*

[Attorney for Rivera]: Okay.

[Mr. Drayden]: Like robbed.

N.T. Jury Trial, at 184, 190-91 (emphasis added).

Likewise, Mr. Rivera-Rodriguez, the confidential informant, testified about his conversation with Appellant and Rivera on May 31, 2012:

[The Commonwealth]: And when they[, Appellant and Rivera,] arrived at your home, what happened next?

[Mr. Rivera-Rodriguez]: As soon as they arrived, they came and they told me, did you hear about the murder on Memorial Day [May 28, 2012]? I specifically told them no. They – then [Appellant] pointed at [Rivera] and said he was the one that pulled the trigger while laughing.

[The Commonwealth]: [W]ho was laughing?

[Mr. Rivera-Rodriguez]: Pretty much both of them.

[The Commonwealth]: [D]o you remember specifically who it was that said that to you?

[Mr. Rivera-Rodriguez]: Okay. First person that said that was [Appellant] and then [Rivera] confirmed it[.]

[The Commonwealth]: Okay. When [you] say he confirmed it, can you tell us what you mean by he confirmed it?

- 8 -

[Mr. Rivera-Rodriguez]: He specifically told me exactly what he did, and he went to go get a car, went behind the guy, wouldn't give up the keys so he shot him.

[The Commonwealth]: And did [Appellant] say anything about that event?

[Mr. Rivera-Rodriguez]: No, he just said he was there.

N.T. Jury Trial, at 247-48.

Based on these witnesses' testimony, there was evidence that Appellant aided in the attempted robbery and, thereby, acted as Rivera's accomplice. As set forth *supra*, a criminal homicide committed while a defendant is engaged as a principal *or an accomplice* in the perpetration of a felony — which, by definition, includes an attempted robbery — constitutes second degree murder. **See** 18 Pa.C.S. §§ 2502(b), (d). Here, Rivera killed Bernabe-Martinez while Appellant was acting as Rivera's accomplice, by fighting and essentially cornering Bernabe-Martinez, during the robbery. Accordingly, there is sufficient evidence in this case to find every element of second degree murder beyond a reasonable doubt.[4] **See Hansley**, 24 A.3d at 416.

_____

[4] We note that the jury found Appellant not guilty in the robbery of Bernabe-Martinez. Nevertheless, consistency in a verdict is not required. **Commonwealth v. Miller**, 35 A.3d 1206, 1213 (Pa. 2012) (concluding that the "[a]ppellee's acquittal of the predicate offense of robbery does not necessitate the vacatur of his conviction of second-degree murder"). Our Supreme Court has explained that,

the second-degree murder statute does not set forth or require the commission of the predicate offense as an element. To secure a conviction for second-degree murder, the

*(Footnote Continued Next Page)*

- 9 -

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/29/2016

---

*(Footnote Continued)* ─────────

Commonwealth must prove that the defendant committed a murder "while [he or she] was engaged ... in the perpetration of a felony." "Perpetration of a felony" is statutorily defined in a very broad manner, encompassing, *inter alia*, "[t]he act of the defendant in engaging in ... the commission of, or an attempt to commit, ... robbery...." Based on a plain reading of this statutory language … to convict an accused of second-degree murder, the Commonwealth is not required to prove that the accused actually committed the predicate offense.

*Id*. at 1212 (internal citations and emphasis omitted).