J-S64001-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| GARY JOSEPH HINTON | : | |
| | : | No. 628 MDA 2017 |
| Appellant | | |

Appeal from the Judgment of Sentence February 6, 2017
In the Court of Common Pleas of Adams County
Criminal Division at No(s):  CP-01-CR-0000479-2016

BEFORE:   PANELLA, J., SHOGAN, J., and FITZGERALD*, J.

MEMORANDUM BY PANELLA, J.                    **FILED DECEMBER 08, 2017**

Appellant, Gary Joseph Hinton, appeals from the judgment entered in the Adams County Court of Common Pleas following a jury trial. Appellant contends the trial court erred in consolidating his trial with his co-defendant, and denying his requests for an acquittal. We affirm.

The relevant facts and procedural history for this matter are as follows. On November 19, 2015, the windows of three vehicles owned by Patricia Ivimey, Diane Lenhart, and Yanessa Kaserman, respectively, were smashed in the parking lot of the Spirit Trust Lutheran Home[1] in Adams County, Pennsylvania. The victims reported missing items, including purses with credit

_____

* Former Justice specially assigned to the Superior Court.

[1] It appears that at the time of the incident, the business was referred to as the Gettysburg Lutheran Home. **See** Trial Court opinion, 4/10/17, at 1 n.1.

cards inside, from their vehicles. Ivimey later reported to the police that someone used her stolen Chase Amazon Visa Card without her permission at the Gettysburg Walmart, the Gettysburg Sheetz, and the Fayetteville Rutter on the night of November 19, 2015.

Based upon this information, Trooper Jonathan Wolfe of the Pennsylvania State Police contacted the Gettysburg Walmart and the Gettysburg Sheetz for surveillance photographs from that night. Once he received photographs for the relevant times, Trooper Wolfe determined the use of Ivimey's credit card to purchase fuel for co-defendant's vehicle on November 19. Trooper Wolfe brought co-defendant in for questioning. During the interview, co-defendant admitted to using Ivimey's credit card, but claimed he received it from another person and did not know about its illegal status. Trooper Wolfe later interviewed Appellant, who admitted to being present in the Walmart when co-defendant used Ivimey's credit card, but denied knowledge of its impermissible use.

Ultimately, through a criminal complaint, the Commonwealth charged Appellant with two counts of access device fraud,[2] five counts of theft by

---

[2] 18 Pa.C.S.A. § 4106(a)(1)(ii). The two counts arose from the alleged unauthorized use of the credit cards of Westbrook and Ivimey, respectively. **See** Criminal Complaint, 12/14/15, at 1.

unlawful taking-moveable property,[3] and six counts of criminal mischief.[4] Presumably, at approximately the same time, co-defendant was charged for his part in the November 19 offenses. The Commonwealth moved to join Appellant and co-defendant for trial. After a hearing, the trial court granted the Commonwealth's request for joinder over Appellant's objections.

Appellant and co-defendant proceeded to a joint trial. By the commencement of trial, Appellant only faced five of the original thirteen charges—one count of access device fraud, three counts of theft by unlawful taking-moveable property, and one count of criminal mischief.[5] *See* N.T., 12/7/16, at 8. Ivimey, Kaserman, Lenhart, Trooper Wolfe, Tracie Clevenger, and Jose Vega, all testified on behalf of the Commonwealth. Ivimey testified that someone used her credit card at the Gettysburg Sheetz and Walmart on

_____

[3] 18 Pa.C.S.A. § 3921(a). The five counts arose from allegations that Appellant exercised unlawful control over purses belonging to five separate victims. *See id*.

[4] 18 Pa.C.S.A. § 3304(a)(5). The six counts arose from allegations that Appellant damaged the vehicle windows of six separate victims. *See id*., at 2.

[5] The Commonwealth dropped five of the six counts of criminal mischief at Appellant's arraignment. *See* Criminal Information, 5/19/16. Further, through the Criminal Information, the Commonwealth specified the charges filed in relation to each specific victim. *See id*. (count 1: access device fraud (Westbrook); count 2, access device fraud (Ivimey); count 3, theft (Ivimey); count 4, theft (Westbrook); count 5, criminal mischief (all victims); count 6, theft (Martinez); count 7, theft (Lenhart); and count 8, theft (Kaserman)). Further, on the day of trial, the Commonwealth dropped counts 1, 4 and 6 from the criminal information. *See* Criminal Information, 5/19/16. Thus, the remaining charges against Appellant were count 2, access device fraud (Ivimey), count 3, theft (Ivimey), count 7, theft (Lenhart), and count 8, theft (Kaserman).

November 19 without her permission. *See id*., at 38-39. Clevenger, a loss prevention agent with Sheetz, confirmed that photographic evidence placed co-defendant's vehicle at the gas pump where Ivimey's credit card, as confirmed by Trooper Wolfe, was used. *See id*., at 59, 62. Vega, an assistant manager at the Gettysburg Walmart, testified photographic evidence from the store's security cameras placed two men in the checkout lane at Walmart who then used Ivimey's credit card. *See id*., at 68-71. Trooper Wolfe provided testimony related to his investigation, and the information received during the pre-arrest interviews with co-defendant and Appellant. *See id*., at 78-98.

At the close of the Commonwealth's case, Appellant's counsel, citing insufficient evidence, moved for an acquittal on all of Appellant's remaining charges. *See id*., at 98-100. The trial court granted Appellant's request as to the counts of theft by unlawful taking-moveable property and criminal mischief, but denied Appellant's request as to the count of access device fraud in relation to the unauthorized use of Ivimey's credit card. *See id*., at 103-104

Appellant did not testify at trial, but co-defendant did. Co-Defendant admitted he used Ivimey's credit card at both the Sheetz and the Walmart, but claimed he received the credit card from Appellant and did not know it belonged to Ivimey or that he used it without the owner's permission. *See id*., at 109-111. Further, co-defendant testified that he did not place all of the items purchased using Ivimey's credit card on the conveyor belt at Walmart.

*See id*. After the close of evidence, the jury convicted Appellant of access device fraud. *See id*., at 185.

Appellant appeared for sentencing on February 6, 2017, and once again, motioned the trial court for an acquittal based upon insufficient evidence. The trial court denied this request, and sentenced Appellant to a term of 24 months to 48 months' imprisonment. This timely appeal follows.

Prior to addressing Appellant's issues on the merits, we must first determine whether he has properly preserved one of them for our review. In his third issue, Appellant contends the trial court erred in joining his case with the case of his co-defendant. While Appellant provides several arguments to support his claim of inappropriate joinder, he has failed to ensure that the certified record contains the information necessary for our review. Specifically, he has failed to provide us with a transcript of the September 26, 2016 hearing in which the Commonwealth presented its joinder motion.

"The fundamental tool for appellate review is the official record of events that occurred in the trial court." *Commonwealth v. Preston*, 904 A.2d 1, 6 (Pa. Super. 2006) (*en banc*) (citation omitted). We cannot consider on appeal any item that is not in the official, or certified, record. *See id*.

"Our law is unequivocal that the responsibility rests upon the appellant to ensure that the record certified on appeal is complete in the sense that it contains all of the materials necessary for the reviewing court to perform its duty." *Id*., at 7 (citation omitted). "With regard to missing transcripts, the Rules of Appellate Procedure require an appellant to order and pay for any

transcript necessary to permit resolution of the issues raised on appeal." ***Id***. (citing Pa.R.A.P. 1911(a)).

Here, a review of the order for transcript attached to Appellant's notice of appeal reveals Appellant did not order the transcript from the September 26 hearing. Appellant *only* ordered the trial transcript and the sentencing transcript.[6]

> When the appellant … fails to conform to the requirements of Rule 1911, any claims that cannot be resolved in the absence of the necessary transcript or transcripts must be deemed waived for the purpose of appellate review. It is not proper for either the Pennsylvania Supreme Court or the Superior Court to order transcripts nor is it the responsibility of the appellate courts to obtain the necessary transcripts.

***Id***. (citation to case law omitted).

Without this transcript, the certified record contains no information related to the charges of the co-defendant at the time of the hearing and/or the arguments the trial court considered when ruling on the Commonwealth's joinder motion. Thus, because we cannot resolve this claim in the absence of the September 26 hearing, we must deem this argument waived for our review.

Moving to the issues Appellant has preserved for our review, Appellant challenges the trial court's decision to deny his requests for an acquittal, both at trial and prior to sentencing. Appellant's claims of error amounts to a

---

[6] The docket entries reveal the transcript for the September 26 hearing was not filed in the trial court.

challenge to the sufficiency of the evidence for his conviction of access device fraud. **See Commonwealth v. Hutchinson**, 947 A.2d 800, 805 (Pa. Super. 2008) ("A motion for judgment of acquittal challenges the sufficiency of the evidence to sustain a conviction on a particular charge, and is granted only in cases in which the Commonwealth has failed to carry its burden regarding that charge.") Specifically, Appellant argues the Commonwealth failed to present evidence to prove Appellant used Ivimey's credit card. Appellant also contends that accomplice liability cannot attach as the Commonwealth failed to show Appellant's "intent" to use Ivimey's credit card without her permission.

When reviewing a sufficiency of the evidence claim:

Our standard for evaluating sufficiency of the evidence is whether the evidence, viewed in the light most favorable to the Commonwealth [as verdict winner], is sufficient to enable a reasonable [fact-finder] to find every element of the crime beyond a reasonable doubt. [T]he entire trial record must be evaluated and all evidence actually received must be considered, whether or not the trial court's rulings thereon were correct. Moreover, [t]he Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Finally, the trier of fact, while passing upon the credibility of witnesses and the weight to be afforded the evidence produced, is free to believe all, part or none of the evidence.

**Commonwealth v. Shull**, 148 A.3d 820, 844 (Pa. Super. 2016) (citation omitted; brackets in original).

A person commits access device fraud if he or she "uses an access device to obtain or in an attempt to obtain property or services with knowledge that the access device was issued to another person who has not authorized its

- 7 -

use." 18 Pa.C.S.A. § 4106(a)(1)(ii). Further, "[a] person is an accomplice of another person in the commission of an offense if […] with the intent of promoting or facilitating the commission of the offense, he (i) solicits such other person to commit it; or (ii) aids or agrees or attempts to aid such other person in planning or committing it[,]" 18 Pa.C.S.A. § 306(c)(1). Also, "[a]ccomplice liability may be establish wholly by circumstantial evidence. Only the least degree of concert or collusion in the commission of the offense is sufficient to sustain a finding of responsibility as an accomplice. No agreement is required, only aid." *Commonwealth v. Mitchell*, 135 A.3d 1097, 1102 (Pa. Super. 2016) (internal citations and quotations omitted).

The trial court appears to agree with Appellant's claim that the Commonwealth failed to prove that Appellant "actually used [Ivimey's] card." *See* Trial Court opinion, 4/10/17, at 6. However, the trial court concluded the Commonwealth presented sufficient evidence to convict Appellant under a theory of accomplice liability. *See id*., at 6-8. We agree.

Ivimey testified someone used her credit card, without her permission, to make a purchase at Walmart. Vega testified that photographs from Wal-Mart's security system showed two men making a purchase with, what Trooper Wolfe later confirmed to be, Ivimey's credit card. During interviews with Trooper Wolfe, both Appellant and co-defendant admitted to being present during the purchase made with Ivimey's credit card. And Trooper Wolfe testified that co-defendant admitted to using the card to make the

purchases at Walmart, but claimed to have received the card from someone else.

Co-defendant claimed Appellant gave him the credit card to use at both Sheetz and Walmart, and that he gave the credit card back to Appellant after the purchase at Walmart. Further, co-defendant denied having placed some of the items purchased at Walmart on the conveyor belt.

In the light most favorable to the Commonwealth, as the verdict winner, the evidence is sufficient to support Appellant's conviction as an accomplice for access device fraud. Co-defendant's testimony alone, that Appellant gave him the credit card to use, is enough to infer intention to aid another to commit access device fraud. Thus, Appellant's sole remaining allegation on appeal fails.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/10/2017