J. S25042/17

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :    IN THE SUPERIOR COURT OF
                          :            PENNSYLVANIA
           v.             :
                          :
ROLAND BROWN,             :        No. 1348 EDA 2016
                          :
           Appellant     :

Appeal from the Judgment of Sentence, April 22, 2016,
in the Court of Common Pleas of Philadelphia County
Criminal Division at Nos. CP-51-CR 0013828-2014,
CP-51-CR-0013829-2014, CP-51-CR-0013830-2014,
CP-51-CR-0013831-2014, CP-51-CR-0013834-2014,
CP-51-CR-0013836-2014, CP-51-CR-0013837-2014

BEFORE:  BENDER, P.J.E., RANSOM, J., AND FORD ELLIOTT, P.J.E.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:        **FILED MAY 12, 2017**

Roland Brown appeals from the April 22, 2016 aggregate judgment of sentence of 45 to 90 years' imprisonment imposed after he was found guilty of multiple counts of robbery, robbery of a motor vehicle, theft by unlawful taking or disposition, receiving stolen property, use or possession of an electronic incapacitation device, criminal conspiracy, possessing an instrument of crime, simple assault, aggravated assault, recklessly endangering another person, terroristic threats, and criminal attempt.[1]  After careful review, we affirm.

---

[1] 18 Pa.C.S.A. §§ 3701, 3702, 3921, 3925, 908.1, 903, 907, 2701, 2702, 2705, 2706, and 901, respectively.

The trial court summarized the facts pertinent to the issues appellant raises on appeal as follows:

> On August 11, 2013, at about 1:00 in the morning, Erin Norton was leaving a 7-Eleven in the area of 1200 Leopard Street when she encountered [a]ppellant and a woman. Ms. Norton testified that she heard footsteps behind her and put her arms in the air. She said [a]ppellant tased her and grabbed her pocketbook. She did not see the taser, but knew what it felt like, and testified that she was tased in her back. Inside the purse were car keys, $150 worth of cosmetics, social security cards, and a smaller bag worth $75. On October 3, 2013, Ms. Norton was shown a photo array of eight men, and identified [a]ppellant as the individual who had taken her bag. Ms. Norton was also shown a photo array of eight women, and she was able to identify the woman with [a]ppellant. She also identified [a]ppellant in a six-person lineup approximately one year later.
>
> . . . .
>
> Mary Jefferies also testified at trial. In August of 2013 she and [a]ppellant lived at the same address (along with others) in North Philadelphia. Ms. Jefferies testified that at that time she was in a relationship with [a]ppellant. On August 11, 2013, at about 1:00 in the morning, [a]ppellant and Ms. Jefferies left their home, at his instigation. She testified that he asked her to come with him, and that he was going to go on a robbery spree. When she refused at first, he burned her upper arm with the "Dutch" [cigar] he had been smoking. After that she went with him, and they saw a white woman, approximately late twenties-early thirties, walking alone. Ms. Jefferies testified that [a]ppellant ran toward the woman and grabbed her purse. When the woman fought him, [a]ppellant tased her, and was ultimately able to take the purse.

Trial court opinion, 9/21/16 at 2, 6 (citations to notes of testimony omitted).

Following the robbery of Norton, appellant robbed eight additional individuals over the course of a four-week span from mid-August until mid-September 2013. Specifically, on August 13, 2013, appellant robbed Jennifer Gallo of her purse near the 6600 block of Castor Avenue in Philadelphia, tasering her repeatedly when she resisted. (Notes of testimony, 11/23/15 at 132-136.) On August 20, 2013, appellant robbed Tysheia Parker of her cell phone and money near C and Louden Streets in Philadelphia. (*Id.* at 31-32.) Two day later, on August 22, 2013, appellant stole Richmond Jackson, III's Nissan Altima from a convenience store parking lot. That same afternoon, appellant punched Sam Chen six times while he was standing at a mailbox on 1100 Knorr Street in Philadelphia and robbed him of his wallet. (*Id.* at 51-54, 138-142.) On September 2, 2013, appellant assaulted and robbed Richard Kauffman and Megan Matuzak near Front Street and Girard Avenue in Philadelphia. (*Id.* at 71-74.) Matuzak sustained a knife cut to her thigh that required six stiches to close and Kauffman sustained multiple cuts and bruises. (*Id.* at 75-88). Thereafter, on September 16, 2013, appellant robbed Erin Burke and William Conroy at knifepoint in the area of 7000 Brous Avenue in Philadelphia. (Notes of testimony, 11/24/15 at 32-36.) In each instance, appellant was accompanied by his cousin and then-girlfriend, Mary Jefferies, who actively participated in the robberies to varying degrees. (*See* notes of testimony, 11/23/15 at 123-159.)

Appellant waived his right to a jury and proceeded to a bench trial on November 23, 2015. Following a two-day trial, appellant was found guilty of the aforementioned offenses and sentenced to an aggregate term of 45 to 90 years' imprisonment on April 22, 2016. At the sentencing hearing, appellant made an oral motion for reconsideration of his sentence, which was denied by the trial court that same day. (Notes of testimony, 4/22/16 at 31-32.) This timely appeal followed on April 23, 2016. On May 2, 2016, the trial court directed appellant to file a timely concise statement of errors complained of on appeal, in accordance with Pa.R.A.P. 1925(b). Appellant filed his Rule 1925(b) statement on May 6, 2016, and the trial court filed its Rule 1925(a) opinion on September 21, 2016.

Appellant raises the following issues for our review:

    A.    DO APPELLANT'S SENTENCES CONSTITUTE AN ABUSE OF DISCRETION AND SHOULD THE MATTERS BE REMANDED FOR RESENTENCING?

    B.    SHOULD APPELLANT'S CONVICTION FOR CONSPIRACY FOR CASE CP-51-CR-0013836-2014 BE VACATED BECAUSE IT IS INSUFFICIENT AS A MATTER OF LAW DUE TO THE FACT THAT THERE WAS NO CONSPIRACY SINCE THERE WAS NO AGREEMENT WITH THE CODEFENDANT, THERE WAS NO MEETING OF MINDS, AND THE CODEFENDANT DID NOT ACT AS A COCONSPIRATOR BUT UNDER DURESS?

Appellant's brief at 4.

We begin by addressing appellant's claim that his sentence of 45 to 90 years' imprisonment was manifestly excessive and unreasonable (*Id.* at

11-13.) Specifically, appellant contends that the trial court's imposition of consecutive sentences on four of the six counts of robbery effectively constituted a life sentence and "is shocking to the conscience." (*Id.*) Appellant further argues that the trial court failed "to state any adequate reasons for [his] lengthy sentence" and did not take into consideration his "individual deterrence, rehabilitation, and retribution" nor the fact he apologized for his actions and made a "plea for mercy." (*Id.* at 11, 13.)

Our standard of review in assessing whether a trial court has erred in fashioning a sentence is well settled.

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

*Commonwealth v. Zirkle*, 107 A.3d 127, 132 (Pa.Super. 2014) (citation omitted), *appeal denied*, 117 A.3d 297 (Pa. 2015).

Where an appellant challenges the discretionary aspects of his sentence, as is the case here, the right to appellate review is not absolute. *See Commonwealth v. Allen*, 24 A.3d 1058, 1064 (Pa.Super. 2011). Rather, an appellant challenging the discretionary aspects of his sentence must invoke this court's jurisdiction by satisfying the following four-part test:

> (1) whether the appeal is timely; (2) whether [a]ppellant preserved his issue; (3) whether [a]ppellant's brief includes a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of sentence; and (4) whether the concise statement raises a substantial question that the sentence is appropriate under the sentencing code.

*Commonwealth v. Carrillo-Diaz*, 64 A.3d 722, 725 (Pa.Super. 2013) (citations omitted).

Here, the record reveals that appellant filed a timely notice of appeal and challenged the discretionary aspects of his sentence in his oral motion for reconsideration of his sentence. (*See* notes of testimony, 4/22/16 at 31-32.) Appellant also included a statement in his brief that comports with the requirements of Pa.R.A.P. 2119(f). (*See* appellant's brief at 11-15.) Accordingly, we must determine whether appellant has raised a substantial question.

"The determination of what constitutes a substantial question must be evaluated on a case-by-case basis." *Commonwealth v. Griffin*, 65 A.3d 932, 935 (Pa.Super. 2013) (citation omitted), *appeal denied*, 76 A.3d 538 (Pa. 2013). "A substantial question exists only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." *Commonwealth v. Glass*, 50 A.3d 720, 727 (Pa.Super. 2012) (citation omitted), *appeal denied*, 63 A.3d 774 (Pa. 2013).

Instantly, appellant has failed, at least in part, to raise a substantial question for our review. The "[l]ong standing precedent of this [c]ourt recognizes that 42 Pa.C.S.A. [§] 9721 affords the sentencing court discretion to impose its sentence concurrently or consecutively to other sentences being imposed at the same time or to sentences already imposed." **Commonwealth v. Marts**, 889 A.2d 608, 612 (Pa.Super. 2005). Generally, the imposition of consecutive sentences does not raise a substantial question. **See Commonwealth v. Pass**, 914 A.2d 442, 446 (Pa.Super. 2006) (stating that a challenge to the trial court's discretion to impose a consecutive sentence does not raise a substantial question). Such a claim may raise a substantial question "in only the most extreme circumstances, such as where the aggregate sentence is unduly harsh, considering the nature of the crimes and the length of imprisonment." **Commonwealth v. Dodge**, 77 A.3d 1263, 1270 (Pa.Super. 2013) (citation omitted), **appeal denied**, 91 A.3d 161 (Pa. 2014). This case simply does not present "extreme circumstances," and appellant's sentence is not unduly harsh considering the extensive criminal conduct that occurred in the case, the nature of the crimes, and the length of imprisonment. Accordingly, the trial court's decision to impose consecutive, rather than concurrent, sentences on four of appellant's six robbery convictions does not present a substantial question for our review.

However, to the extent appellant argues that the trial court failed to consider his individual rehabilitative needs or any of the other relevant factors in Section 9721(b), we find this claim presents a substantial question for our review. (**See** appellant's brief at 11, 13.) This court has recognized that a "claim that the sentencing court disregarded rehabilitation and the nature and circumstances of the offense in handing down its sentence presents a substantial question for our review." **Dodge**, 77 A.3d at 1273. Accordingly, we proceed to consider the merits of these discretionary aspects of sentencing claims.

Herein, the record reveals that the trial court considered and weighed numerous factors in fashioning appellant's sentence, including appellant's age, prior criminal history, and mental health; the safety and impact of his crimes on the community; and the sentencing guidelines. Specifically, the trial court stated as follows:

> Thank you. I've considered the fact these are second strikes; I've considered the guidelines; I've considered the presentence mental health reports, the facts and circumstances of this case, the argument of counsel, what the witness has said today, as well as what [appellant] has said today. [Appellant], I don't really know what to say to you, the number of robberies, the way they were perpetrated the number of victims involved and everything else. I think the facts -- the trial speaks for itself[,] which I would also refer to because I sat through the waiver trial of this case. You obviously have skills and abilities. I heard from your family, you're working, school, etc. but for whatever reason you chose to go a different route which makes you []

> very dangerous. I think the words [sic] [] summarizes a lot of issues we're dealing with.
>
> . . . .
>
> And [appellant], you're 36. I think that should be sufficient to protect the community.

Notes of testimony, 4/22/16 at 26-28.

The record further reveals that the trial court heard testimony from appellant's mother and sister with regard to his character, educational background, and upbringing. (*Id.* at 6-8.) Additionally, the trial court heard testimony from appellant, who apologized to the court, the victims, and his family and made an extensive plea for leniency. (*Id.* at 24-26.) Although the record reflects that the trial court did not specifically state that it considered appellant's rehabilitative needs, the trial court was in possession of a presentence investigation ("PSI") report and indicated that he "considered it." (*Id.* at 26.) Where the trial court has the benefit of a PSI report, as is the case here, "we shall . . . presume that the sentencing judge was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors." *Commonwealth v. Antidormi*, 84 A.3d 736, 761 (Pa.Super. 2014) (citation omitted), *appeal denied*, 95 A.3d 275 (Pa. 2014). Accordingly, we find no abuse of the trial court's discretion, and appellant's challenge to the discretionary aspects of his sentence must fail.

Appellant next argues that there was insufficient evidence to sustain his conviction for criminal conspiracy with respect to the robbery of Norton because he "burn[ed] . . . Jefferies[] using a cigar so that she would accompany him on the [r]obbery" and "[t]here was no meeting of the minds, only duress." (Appellant's brief at 14.) This claim is meritless.

> In reviewing the sufficiency of the evidence, we must determine whether the evidence admitted at trial and all reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, is sufficient to prove every element of the offense beyond a reasonable doubt. As an appellate court, we may not re-weigh the evidence and substitute our judgment for that of the fact-finder. Any question of doubt is for the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact can be drawn from the combined circumstances.

*Commonwealth v. Thomas*, 988 A.2d 669, 670 (Pa.Super. 2009) (citations omitted), *appeal denied*, 4 A.3d 1054 (Pa. 2010).

Criminal conspiracy requires the Commonwealth to prove that appellant "(1) entered into an agreement to commit or aid in an unlawful act with another person or persons; (2) with a shared criminal intent; and (3) an overt act was done in furtherance of the conspiracy." *Commonwealth v. Mitchell*, 135 A.3d 1097, 1102 (Pa.Super. 2016), *appeal denied*, 145 A.3d 725 (Pa. 2016); *see also* 18 Pa.C.S.A. § 903(a). A conspiratorial agreement can be proven by circumstantial evidence and "inferred from a variety of circumstances including, but not limited to, the

- 10 -

relation between the parties, knowledge of and participation in the crime, and the circumstances and conduct of the parties surrounding the criminal episode." ***Commonwealth v. Feliciano***, 67 A.3d 19, 26 (Pa.Super. 2013) (***en banc***) (citation and internal quotation marks omitted), ***appeal denied***, 81 A.3d 75 (Pa. 2013).

Viewing the evidence in the light most favorable to the Commonwealth, the verdict winner, we find that there was sufficient evidence to establish that appellant entered into a criminal conspiracy with Jefferies to rob Norton. As noted, appellant committed a string of robberies that commenced with the robbery of Norton in the early morning of August 11, 2013, and appellant was accompanied by a woman matching Jefferies' description in each instance. (Notes of testimony, 11/24/15 at 55-61, 63.) At trial, Jefferies testified that she was present during each of the robberies and acknowledged actively participating in them to varying degrees. (Notes of testimony, 11/23/15 at 123-159.) Contrary to appellant's contention, we find there was a tacit agreement between appellant and Jefferies to rob Norton on the evening in question. The record reflects that Jefferies initially refused to accompany appellant after he informed her that they were going on a "robbery spree," and appellant burned her arm with cigar. (***Id.*** at 125-130.) Ultimately, however, Jeffries did accompany appellant to the location of the robbery in question and stood in close proximity to appellant as he tasered Norton and stole her purse, electing not to withdraw from this

conspiracy, despite the apparent opportunity to do so. (*Id.* at 130-31; notes of testimony, 11/24/15 at 55-57.)

Appellant's attempt to assert duress on Jefferies' behalf does not render the evidence presented in support of his criminal conspiracy charges insufficient. In Pennsylvania, it is well settled that the defense of duress is available to a person who was coerced to commit a crime, not the person alleged to have committed the coercion. *See* 18 Pa.C.S.A. § 309(a) (stating that duress "is a defense that the actor engaged in the conduct charged to constitute an offense because he was coerced to do so by the use of, or a threat to use, unlawful force against his person or the person of another, which a person of reasonable firmness in his situation would have been unable to resist."). Notably, Jefferies did not even raise this defense herself and took full responsibility for her participation in the conspiracy at issue, pleading guilty to all the charges brought against her. (*See* notes of testimony, 11/23/15 at 166.) Accordingly, we conclude that appellant's claim that there was insufficient evidence to sustain his conviction for conspiring to rob Norton must fail.

For all the foregoing reasons, we affirm the April 22, 2016 judgment of sentence of the trial court.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/12/2017