J-S60010-17

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| MICHAEL JOE KOZUCH, III, | |
| Appellant | No. 1805 WDA 2016 |

Appeal from the Judgment of Sentence October 31, 2016
In the Court of Common Pleas of Somerset County
Criminal Division at No(s): CP-56-CR-0000833-2015

BEFORE: OLSON, J., DUBOW, J., and STEVENS, P.J.E.*

MEMORANDUM BY OLSON, J.:                    FILED OCTOBER 4, 2017

Appellant, Michael Joe Kozuch, III, appeals from the judgment of sentence entered on October 31, 2016, following his jury trial convictions for possession with intent to deliver a controlled substance (PWID), possession of a controlled substance, and possession of drug paraphernalia.[1] We affirm.

We summarize the facts and procedural history of this case as follows. The incident at issue took place on June 26, 2015 at Coalfield's, a gas station, market and diner, in Somerset County, Pennsylvania. Desiree Fleegle was a server at Coalfield's. Julie Phillip, a cashier at Coalfield's, worked three or four daily shifts per week with Fleegle. Phillip regularly observed Fleegle's drastic mood swings, poor eating habits, and frequent

_____

[1]   35 P.S. §§ 780-113(a)(30), 780-113(a)(16), and 780-113(a)(32), respectively.

*Former Justice specially assigned to the Superior Court.

breaks to go outside, to the basement, and to the men's bathroom.[2] When Fleegle began working at Coalfield's in April of 2015, Phillip saw Appellant almost every day that Fleegle worked.

Jeffrey Miele, owner and operator of Coalfield's, observed Appellant driving Fleegle daily to and from work in Fleegle's car. According to Miele, Appellant would come inside Coalfield's, use the bathroom, and leave without purchasing anything. Miele reviewed surveillance video after Phillip reported her concerns about Fleegle's behavior. In the surveillance videos, Miele witnessed that when Fleegle started her shift, Appellant would come into the store and go to the men's bathroom. When Appellant left, Fleegle would immediately go into the men's bathroom.

On June 26, 2015, Miele observed Appellant driving Fleegle's car with an unknown man in the passenger seat. Miele watched and followed the unknown man as he entered Coalfield's. Phillip directed Miele to the men's bathroom. The unknown man exited the men's restroom, avoided contact with employees, and left the store without making a purchase. Miele, suspicious of a drug delivery, went directly into the men's bathroom, locked the door, and began searching for narcotics. He found six stamp bags of a substance, later identified as heroin, underneath the garbage can. When

_____

[2] It was part of the servers' job to make sure the men's bathroom was clean, so Phillip was not surprised when Fleegle entered the men's restroom on occasion.

Miele confronted Fleegle, she grabbed her purse and tried to leave, but other employees detained her and called police. Miele testified that Fleegle called Appellant on her cellular phone and Fleegle eventually managed to flee the store, but left her purse. Miele followed behind Fleegle in his automobile and witnessed someone, driving Fleegle's vehicle, pick her up less than a mile from Coalfield's.

When police arrived, Miele turned over the suspected narcotics and Fleegle's purse. After watching the surveillance video of the incident, the police inventoried Fleegle's purse, which contained an eyeglass case holding two metal spoons, two syringes, and a cotton swab. Pennsylvania State Police Trooper Matthew Montag went to Appellant's residence where Fleegle was sitting on the back porch. Her car was parked in the driveway. Fleegle was unwilling to answer questions about the earlier incident and police arrested her. Approximately an hour later, police interviewed Appellant who denied involvement in the attempted delivery of narcotics. Appellant claimed that he had been at his home babysitting Fleegle's children. When Appellant was told that he was observed driving away from the scene, he became extremely nervous. Appellant admitted to police that he had driven a man named Billy to Coalfield's at Billy's request. Appellant, however, denied knowing Billy and claimed he had never driven him anywhere previously. Police arrested Appellant and the Commonwealth charged him, as an accomplice, with the aforementioned crimes.

A jury convicted Appellant of all of the charges on August 18, 2016. The trial court sentenced Appellant to concurrent sentences of one to two years of incarceration for PWID, one year of probation for possession, and one year of probation for possession of drug paraphernalia. This timely appeal resulted.[3]

On appeal, Appellant presents the following issue for our review:

> Whether the trial court erred by denying Appellant's [m]otion for [a]cquittal when the Commonwealth failed to prove all elements of each crime?[4]

_____

[3] On November 23, 2016, Appellant simultaneously filed a notice of appeal and a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). The trial court issued an opinion pursuant to Pa.R.A.P. 1925(a) on March 21, 2017.

[4] Ordinarily, when challenging the sufficiency of the evidence on appeal, an appellant waives his claims when he fails to specify which elements of each of the individual crimes were not sufficiently proven. See Commonwealth v. Gibbs, 981 A.2d 274, 281 (Pa. Super. 2009) ("[W]hen challenging the sufficiency of the evidence on appeal, the [a]ppellant's 1925 statement must 'specify the element or elements upon which the evidence was insufficient' in order to preserve the issue for appeal."). In his sole issue presented on appeal, as set forth above, Appellant did not specify what elements were not established and generally challenged all of his convictions; however, upon review of the certified record, Appellant's Rule 1925(b) statement raised the following issue:

> 1. Whether or not the [c]ourt erred as a matter of law or abused its discretion by not granting [Appellant's] [m]otion for [a]cquittal when the Commonwealth presented no evidence to prove that [Appellant] was in possession, distributed or was otherwise a part of any drug transaction of the same.

Appellant's Rule 1925(b) Statement, 11/23/2016, (unpaginated) at *1. Appellant asserted that there was insufficient evidence that he possessed

(Footnote Continued Next Page)

Appellant's Brief at 1.

In sum, Appellant argues:

First, the Commonwealth failed to offer any evidence that [] Appellant intended on delivering drugs[.] [] Appellant was charged as an accomplice, but the Commonwealth did not prove that [] Appellant had any knowledge of the alleged crimes. [] Appellant did admit that he had dropped off the unknown male, but for the Commonwealth to prove that [] Appellant was an accomplice to the unknown male, the Commonwealth must first prove that the unknown male had committed the underlying crime. The Commonwealth did prove that the unknown male was at the gas station on the day in question, but the Commonwealth could not prove when the drugs arrived and by whom the drugs arrived. The only evidence offered by the Commonwealth was video of the day in question. There is no testimony offered to show that the unknown male had ever been to the gas station before or had allegedly made any prior deals. As a result, the Commonwealth did not prove that the unknown male had intent to commit a crime, and as such, failed to prove that [] Appellant conspired to commit said crimes.

Second, [the] Commonwealth failed to offer any evidence that showed that either [] Appellant or the unknown male were ever in possession of said drugs. No drugs were found on [] Appellant or the unknown male.

Id. at 8-9.

We note our well-settled standard of review:

A motion for judgment of acquittal challenges the sufficiency of the evidence to sustain a conviction on a particular charge, and

(Footnote Continued) ————————————

and/or delivered narcotics. These issues were preserved. However, Appellant's Rule 1925(b) statement failed to challenge elements related to possession of paraphernalia and we find that aspect of Appellant's current claim waived. As such, we confine our review to Appellant's convictions for PWID and possession of narcotics and affirm Appellant's judgment of sentence for possession of paraphernalia.

is granted only in cases in which the Commonwealth has failed to carry its burden regarding that charge.

Commonwealth v. Richard, 150 A.3d 504, 514 (Pa. Super. 2016) (citation omitted).

We examine a challenge to the sufficiency of the evidence to determine

> whether, when viewed in a light most favorable to the verdict winner, the evidence at trial and all reasonable inferences therefrom is sufficient for the trier of fact to find that each element of the crimes charged is established beyond a reasonable doubt. The Commonwealth may sustain its burden of proving every element beyond a reasonable doubt by means of wholly circumstantial evidence.
>
> The facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubt raised as to the accused's guilt is to be resolved by the fact-finder. As an appellate court, we do not assess credibility nor do we assign weight to any of the testimony of record. Therefore, we will not disturb the verdict unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances.

Commonwealth v. Von Evans, 163 A.3d 980, 983 (Pa. Super. 2017) (citation omitted).

This Court has previously determined:

> To convict a person of PWID, the Commonwealth must prove beyond a reasonable doubt that the defendant possessed a controlled substance and did so with the intent to deliver it. In determining whether there is sufficient evidence to support a PWID conviction, all facts and circumstances surrounding the possession are relevant, and the Commonwealth may establish the essential elements of the crime wholly by circumstantial evidence. Factors to consider in determining whether the drugs were possessed with the intent to deliver include the particular

method of packaging, the form of the drug, and the behavior of the defendant.

Commonwealth v. Bricker, 882 A.2d 1008, 1015 (Pa. Super. 2005) (citations omitted). Simple possession of narcotics is defined as: "[k]nowingly or intentionally possessing a controlled or counterfeit substance by a person not registered[.]" 35 P.S. § 780-113(a)(16).

Moreover,

[i]n narcotics possession cases, the Commonwealth may meet its burden by showing actual, constructive, or joint constructive possession of the contraband. Actual possession is proven by showing that the controlled substance was found on the defendant's person. If the contraband is not discovered on the defendant's person, the Commonwealth may satisfy its evidentiary burden by proving that the defendant had constructive possession of the drug.

Our Supreme Court has defined constructive possession as the ability to exercise a conscious dominion over the illegal substance: the power to control the contraband and the intent to exercise that control. In the words of our Supreme Court, constructive possession is a legal fiction, a pragmatic construct to deal with the realities of criminal law enforcement. It is a judicially created doctrine that enables law enforcement officials to prosecute individuals in situations where the inference of possession is strong, yet actual possession at the time of arrest cannot be shown.

To find constructive possession, the power and intent to control the contraband does not need to be exclusive to the defendant. Our Supreme Court has recognized that constructive possession may be found in one or more actors where the item at issue is in an area of joint control and equal access. Nevertheless, where more than one person has equal access to where drugs are stored, presence alone in conjunction with such access will not prove conscious dominion over the contraband. For the Commonwealth to prove constructive possession where more than one person has access to the contraband, the Commonwealth must introduce evidence demonstrating either

the defendant's participation in the drug related activity or evidence connecting the defendant to the specific room or areas where the drugs were kept. However, an intent to maintain a conscious dominion may be inferred from the totality of the circumstances and circumstantial evidence may be used to establish a defendant's possession of drugs or contraband.

Commonwealth v. Vargas, 108 A.3d 858, 868–869 (Pa. Super. 2014) (en banc) (internal citations and quotations omitted; original brackets and ellipses omitted).

A person is an accomplice of another person in the commission of an offense if:

(1) with the intent of promoting or facilitating the commission of the offense, he:

      (i)      solicits such other person to commit it; or

      (ii)     aids or agrees or attempts to aid such other person in planning or committing it; or

(2) his conduct is expressly declared by law to establish his complicity.

(d) Culpability of accomplice.—When causing a particular result is an element of an offense, an accomplice in the conduct causing such result is an accomplice in the commission of that offense, if he acts with the kind of culpability, if any, with respect to that result that is sufficient for
the commission of the offense.

*       *       *

(g) Prosecution of accomplice only.--An accomplice may be convicted on proof of the commission of the offense and of his complicity therein, though the person claimed to have committed the offense has not been prosecuted or convicted or has been convicted of a different offense or degree of offense or has an immunity to prosecution or conviction or has been acquitted.

18 Pa.C.S.A. § 306(c)–(d), (g). "It is well-established [] that a defendant, who was not a principal actor in committing the crime, may nevertheless be liable for the crime if he was an accomplice of a principal actor." Commonwealth v. Murphy, 844 A.2d 1228, 1234, 577 Pa. 275, 285 (Pa. 2004), citing 18 Pa.C.S.A. § 306(g); Commonwealth v. Bradley, 392 A.2d 688, 690 (Pa. 1978) (the actor and his accomplice share equal responsibility for commission of a criminal act).

Furthermore, this Court has concluded:

> Accomplice liability may be established wholly by circumstantial evidence. Only the least degree of concert or collusion in the commission of the offense is sufficient to sustain a finding of responsibility as an accomplice. No agreement is required, only aid.

Commonwealth v. Mitchell, 135 A.3d 1097, 1102 (Pa. Super. 2016) (internal citations and quotations omitted).

Accordingly,

> two prongs must be satisfied for a defendant to be found guilty as an accomplice. First, there must be evidence that the defendant intended to aid or promote the underlying offense. Second, there must be evidence that the defendant actively participated in the crime by soliciting, aiding, or agreeing to aid the principal. While these two requirements may be established by circumstantial evidence, a defendant cannot be an accomplice simply based on evidence that he knew about the crime or was present at the crime scene. There must be some additional evidence that the defendant intended to aid in the commission of the underlying crime, and then did or attempted to do so. With regard to the amount of aid, it need not be substantial so long as it was offered to the principal to assist him in committing or attempting to commit the crime.

Murphy, 844 A.2d at 1234 (internal citations and quotations omitted).

Here, the trial court determined that there was sufficient circumstantial evidence to convict Appellant of PWID and possession of narcotics based upon the theory of accomplice liability. The trial court noted Fleegle's pattern of strange behavior at work, her possession of heroin related paraphernalia in her purse, and her reaction when confronted with the uncovered heroin as evidence of Fleegle's drug use at Coalfield's. Trial Court Opinion, 3/21/2017, at 10-11. Moreover, evidence showed Appellant drove Fleegle to and from work in her vehicle regularly, would frequently meet Fleegle at Coalfield's, and was often seen going in and out of the men's bathroom just prior to Fleegle entering. Furthermore, the Commonwealth presented evidence that, on the day in question, Appellant admittedly drove a man (he identified as Billy) to Coalfield's in Fleegle's car. Id. at 11. At Coalfield's, the man engaged in behavior substantially similar to Appellant's prior actions, going into the men's bathroom without buying anything, leaving quickly, and avoiding contact with Coalfield's employees. The man then left the area with Appellant in Fleegle's car. The trial court determined that the evidence further showed that "Fleegle attempted to gain entry to the men's restroom while Miele was inside finding the heroin hidden under the trash can." Id. The trial court also pointed to evidence that when confronted, Fleegle tried to leave, called Appellant to come get her, and left her purse when she eventually fled. Id. As such, the trial court concluded that Appellant "knew Fleegle, used her car to drive an unknown person to

Coalfield's, where that unknown person delivered heroin to the men's restroom and Fleegle tried to retrieve the drugs[.]" Id. at 12. According to the trial court, such evidence showed that Appellant "aided the unknown person in the delivery of heroin with full knowledge of what the unknown person was doing, which thereby demonstrate[d] [Appellant's] intent to aid in the commission of this crime." Id.

Based upon our standard of review and the certified record, we discern no abuse of discretion or error of law in denying Appellant's motion for acquittal. In this case, there was sufficient evidence that Appellant acted as an accomplice to the unknown man who constructively possessed and delivered the narcotics found in the men's restroom. While it is true that police did not recover narcotics from any person, the circumstantial evidence showed the unknown man constructively possessed the heroin and deposited six individual packets of heroin under the trashcan in the men's bathroom for Fleegle to retrieve. Fleegle's immediate response in attempting to enter the men's restroom after the unknown man's departure was circumstantial evidence that a drug delivery had recently occurred.[5] Moreover, Appellant's

_____

[5] Contrary to Appellant's contention, Section 306(g) makes clear that he is subject to criminal liability as an accomplice so long as the Commonwealth proves the commission of an offense and his complicity therein. There is no requirement that the Commonwealth prosecute or convict the principal in order to convict an accomplice. The record in this case includes ample circumstantial proof that Appellant aided in the commission of a drug delivery. Accordingly, no relief is due.

role in driving the unknown man to the location and waiting for his return showed Appellant's role in aiding the delivery.[6]   Fleegle's subsequent reaction to the discovery of the narcotics,[7] Appellant's role in picking her up thereafter, and Appellant's nervous response to police questioning and eventual admission that he drove the unknown man to Coalfield's, further demonstrate the presence of drug-related activity at Coalfield's.   In totality, the evidence showed Appellant awareness of drug possession and delivery by the unknown man and Appellant's willingness to aid that individual in bringing about an unlawful result.   Hence, the Commonwealth presented sufficient circumstantial evidence to support Appellant's convictions and we discern no abuse of discretion in denying Appellant's motion for acquittal.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/4/2017

_____

[6]   We have previously determined the driver of a getaway car used in connection with a crime may be found guilty as an accomplice.   See Commonwealth v. Causey, 833 A.2d 165, 173 (Pa. Super. 2003); see also Commonwealth v. Ross, 375 A.2d 113 (Pa. Super. 1977).

[7] Flight demonstrates a consciousness of guilt.   See Commonwealth v. Smith, 146 A.3d 257, 263 (Pa. Super. 2016) (citation omitted).