J-S73008-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
CHRISTIAN MANUEL HERNANDEZ :
:
Appellant : No. 651 MDA 2017

Appeal from the Judgment of Sentence March 3, 2014
In the Court of Common Pleas of Berks County Criminal Division at No(s):
CP-06-CR-0006106-2012

BEFORE: OLSON, J., DUBOW, J., and STRASSBURGER*, J.

MEMORANDUM BY OLSON, J.: **FILED JANUARY 04, 2018**

Appellant, Christian Manuel Hernandez, appeals from the judgment of sentence entered on March 3, 2014, as made final by the denial of Appellant's *nunc pro tunc* post-sentence motion on March 20, 2017. We affirm.

The trial court has provided us with an able and thorough summary of the underlying facts of this case. As the trial court explained:

> On the evening of December 10, 2012, [N.B.] was working [as a pizza delivery driver for Domino's Pizza, in Reading, Pennsylvania; a] delivery order was placed by an individual calling from a toll-free number. The Domino's employee who fielded the call requested another [telephone] number, pursuant to company policy, which the customer provided.
>
> [N.B.] drove to 522 Birch Street in Reading in order to make the delivery [and N.B. arrived at the location sometime between 8:45 p.m. and 9:00 p.m.] He then tried to locate the individual who had placed the order[. As N.B. testified at trial]:

_____
* Retired Senior Judge assigned to the Superior Court.

Q: [W]hat did you do when you arrived at the 500 block of Birch Street?

A: When I arrived, I parked right by the fire hydrant.

Q: Okay.

A: I seen a little kid running to his door. I stuck my head out, asked him if he ordered the pizza. He said no. So then what I did is I called the phone number. As I'm [calling], I see a gentleman [standing] on the step. I'm [looking] at him while I am calling. I seen him pull something out of his pocket. I'm [assuming] it was a cell phone. He hit a button. As soon as he hit the button, my phone stopped [ringing]. So I stuck my head out the window, asked him did he order pizza. He looks at me. He said, yeah, that was me.

Q: And where did you get this phone number that you called?

A: They provided it to the person who picked up the phone.

[N.T. Trial, 2/25/14, at 78-79.]

[N.B.] exited his car and approached the individual – who [N.B.] identified as Appellant – in front of 522 Birch Street. Appellant pulled some money out of his pocket, and [N.B.] opened his warming bag to pull out the food that had been ordered. Appellant reached to grab the pizza, and [N.B.] pushed it away and told him, "no, I'll get it for you." At that moment, another individual came up behind [N.B.] and put a gun to the back of his head. . . . [N.B. testified that he asked: "are you really going to rob me for some pizza?" The individual behind him responded by saying, "no, we want your dough." *Id.* at 82-83.]

[N.B.] started turning around and felt somebody's hands go in his pockets. He saw that this individual was [Appellant. *Id.* at 84]. [N.B.] saw a third individual approach them, who was also toting a handgun. Appellant took [$15.00] from [N.B.'s] pocket. [N.B.] got a good look at Appellant's

- 2 -

face during the incident, as the lighting was good and Appellant stood right in front of him.

[N.B.] held the pizza bag in his left hand while keeping his right hand visible, attempting to show that he was not going to resist. While facing the [] gunman [who had originally approached him from behind, N.B.] kneeled to remove a pizza from the bag, assuming they also wanted to steal the food. [N.B.] saw a flash and grabbed at the barrel of the gun with his left hand. [N.B.] had sustained a gunshot wound above his left chin and was bleeding profusely. He jumped up to fight the gunman, trying to gain possession of the handgun. During this struggle, [N.B.] heard the gunman say, "stop, come back and help me." [N.B.] coughed up blood, lost all his energy, and went to sleep with his head on the curb. Hearing the commotion, a resident exited her nearby home; she saw two individuals – including one in a red hoodie – running together southbound down Birch Street. This neighbor also saw an individual rummaging through [N.B.'s] vehicle, then run away.

Subsequent investigations connected Appellant to the incident. While recovering in his hospital bed, [N.B.] identified Appellant from a photo array. Additionally, [N.B.] provided an in-court identification of Appellant [and testified that Appellant was the individual who wore "the red [hooded sweatshirt] that [N.B.] described, the person who [N.B.] had [his] initial contact with and the person that went through [N.B.'s] pockets and took that [$15.00]." *Id.* at 86.] Investigators also examined relevant cell phone records. The local cellular number provided to Domino's was connected to a prepaid cell phone. That number also placed calls to two individuals, who were later shown to have familial and Facebook connections to Appellant.

Trial Court Opinion, 6/23/17, at 3-4 (some internal citations omitted).

At the conclusion of the trial, the jury found Appellant guilty of one count each of aggravated assault, simple assault, theft by unlawful taking, receiving stolen property, and disorderly conduct, five counts of robbery,

- 3 -

and ten counts of conspiracy.[1]  N.T. Trial, 2/27/14, at 419-421 and 423-424.

The jury found Appellant not guilty of attempted murder and conspiracy to

commit murder.  ***Id.***

On March 3, 2014, the trial court sentenced Appellant to serve an

aggregate term of 234 to 720 months in prison, followed by one year of

probation, for his convictions.[2]  N.T. Sentencing Hearing, 3/3/14, at 17-18.

Appellant filed a timely notice of appeal and, on December 29, 2014, this

Court affirmed Appellant's judgment of sentence.  ***Commonwealth v.***

***Hernandez***, 116 A.3d 702 (Pa. Super. 2014) (unpublished memorandum)

at 1-13.  Within our memorandum, this Court held (among other things)

that Appellant's discretionary aspect of sentencing and merger claims failed,

and that Appellant had waived his weight and sufficiency of the evidence

claims.  ***See id.***

As the trial court explained:

---

[1] 18 Pa.C.S.A. §§ 2702(a)(1), 2701(a)(1), 3921(a), 3925(a), 5503(a)(1), 3701(a)(1)(i)-(v), and 903(a)(1), respectively.

[2] Specifically, the trial court sentenced Appellant to serve:  78 to 240 months in prison for aggravated assault; 78 to 240 months in prison for robbery (to be served consecutively to Appellant's sentence for aggravated assault); 78 to 240 months in prison for conspiracy to commit robbery (to be served consecutively to Appellant's sentence for robbery); and, 12 months of probation for disorderly conduct (to be served consecutively to Appellant's sentence for conspiracy to commit robbery).  The trial court imposed no further penalty for Appellant's remaining convictions.  N.T. Sentencing Hearing, 3/3/14, at 17-18.

Following the Superior Court's decision, on October 9, 2015, Appellant filed a [petition under the Post Conviction Relief Act (PCRA), 42 Pa.C.S.A. § 9541-9546]. On December 12, 2016, counsel filed an amended petition and a hearing was scheduled. Prior to [] the hearing, Appellant and the Commonwealth entered [into] an agreement to permit Appellant to file a limited appeal, concerning only the sufficiency and the weight of the evidence. The [PCRA] court ratified this agreement with an order [entered on] March [9], 2017[; the order reinstated Appellant's post-sentence and appeal rights *nunc pro tunc*, for the limited purpose of permitting Appellant to raise claims that the verdict was against the weight of the evidence and that the evidence was insufficient to support the verdict. PCRA Court Order, 3/9/17, at 1]. Subsequently, Appellant filed a post-sentence motion[, where Appellant claimed that the verdict was against the weight of the evidence because the victim, N.B., could not have "seen [Appellant] sufficiently enough to be able to affirmative[ly] identify him as the perpetrator." Appellant's Post-Sentence Motion, 3/24/17, at 3. The trial court] denied this motion on March 20, 2017. Appellant then filed a[ notice of] appeal on April 18, 2017.

Trial Court Opinion, 6/23/17, at 1-2 (some internal capitalization omitted).

Appellant raises the following claims on appeal:[3]

[1.] Whether there was insufficient evidence to convict Appellant of the offense of aggravated assault, 18 Pa.C.S.A. § 2702(a)(1), where no evidence was presented to support the conclusion that Appellant caused or attempted to cause serious bodily injury to the victim?

[2.] Whether there was insufficient evidence to convict Appellant of the offense of simple assault, 18 Pa.C.S.A. § 2701(a)(1), where no evidence was presented to support the conclusion that Appellant caused or attempted to cause bodily injury to the victim?

_____

[3] For ease of discussion, we have re-numbered Appellant's claims on appeal.

[3.] Whether there was insufficient evidence to convict Appellant of the offense of robbery, 18 Pa.C.S.A. § 3701, and theft by unlawful taking, 18 Pa.C.S.A. § 3921(a), where no evidence was presented to support the conclusion that a theft occurred in that no evidence was presented that anything was taken from the victim during the alleged incident?

[4.] Whether there was insufficient evidence to convict Appellant of all counts of the offense of criminal conspiracy, 18 Pa.C.S.A. § 903(a)(1), where:  (a) no evidence was presented to support the conclusion that Appellant entered into an agreement with any other individual or individuals to commit one or more crimes, and (b) no evidence was presented to support the conclusion that Appellant committed an overt act in furtherance of any such agreement?

[5.] Whether the trial court erred in denying Appellant's post-sentence motion where all of the verdicts were against the weight of the evidence as it is contrary to justice to believe that the jury found credibility in the testimony from [N.B.] identifying Appellant as the perpetrator. . . .

Appellant's Brief at 6-8 (some internal capitalization omitted).

Appellant's initial claims concern the sufficiency of the evidence supporting his convictions.  With respect to any sufficiency of the evidence claim:

The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt.  In applying the above test, we may not weigh the evidence and substitute our judgment for [that of] the fact-finder.  In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence.  Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of

law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

***Commonwealth v. Brown***, 23 A.3d 544, 559-560 (Pa. Super. 2011) (*en banc*) (internal quotations and citations omitted).

For Appellant's first two claims on appeal, Appellant contends that the evidence was insufficient to support his aggravated assault and simple assault convictions because there was "no evidence [] to support the conclusion that [Appellant] shot [N.B.;] . . . all of the evidence presented established that the shooter acted alone and independent of any other alleged assailant." Appellant's Brief at 25-26 (some internal capitalization omitted).[4] This claim fails.

---

[4] Appellant was convicted of aggravated assault under 18 Pa.C.S.A. § 2702(a)(1) and simple assault under 18 Pa.C.S.A. § 2701(a)(1). 18 Pa.C.S.A. § 2702(a)(1) declares:

> (a) Offense defined.--A person is guilty of aggravated assault if he:
>
> (1) attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life[.]

18 Pa.C.S.A. § 2702(a)(1).
*(Footnote Continued Next Page)*

In relevant part, 18 Pa.C.S.A. § 306 declares:

> (a) General rule.--A person is guilty of an offense if it is committed by his own conduct or by the conduct of another person for which he is legally accountable, or both.
>
> (b) Conduct of another.--A person is legally accountable for the conduct of another person when:
>
> . . .
>
> > (3) he is an accomplice of such other person in the commission of the offense.
>
> (c) Accomplice defined.--A person is an accomplice of another person in the commission of an offense if:
>
> > (1) with the intent of promoting or facilitating the commission of the offense, he:
> >
> > > (i) solicits such other person to commit it; or
> > >
> > > (ii) aids or agrees or attempts to aid such other person in planning or committing it; or
> >
> > (2) his conduct is expressly declared by law to establish his complicity.

*(Footnote Continued)* ————————————

Simple assault under 18 Pa.C.S.A. § 2701(a)(1) is defined as follows:

> (a) Offense defined.--Except as provided under section 2702 (relating to aggravated assault), a person is guilty of assault if he:
>
> > (1) attempts to cause or intentionally, knowingly or recklessly causes bodily injury to another[.]

18 Pa.C.S.A. § 2701(a)(1).

(d) Culpability of accomplice.—When causing a particular result is an element of an offense, an accomplice in the conduct causing such result is an accomplice in the commission of that offense, if he acts with the kind of culpability, if any, with respect to that result that is sufficient for the commission of the offense.

. . .

(g) Prosecution of accomplice only.--An accomplice may be convicted on proof of the commission of the offense and of his complicity therein, though the person claimed to have committed the offense has not been prosecuted or convicted or has been convicted of a different offense or degree of offense or has an immunity to prosecution or conviction or has been acquitted.

18 Pa.C.S.A. § 306. "It is well-established [] that a defendant, who was not a principal actor in committing the crime, may nevertheless be liable for the crime if he was an accomplice of a principal actor." ***Commonwealth v. Murphy***, 844 A.2d 1228, 1234 (Pa. 2004), *citing* 18 Pa.C.S.A. § 306(g); ***Commonwealth v. Bradley***, 392 A.2d 688, 690 (Pa. 1978) (the actor and his accomplice share equal responsibility for commission of a criminal act).

Furthermore, this Court has concluded:

Accomplice liability may be established wholly by circumstantial evidence. Only the least degree of concert or collusion in the commission of the offense is sufficient to sustain a finding of responsibility as an accomplice. No agreement is required, only aid.

***Commonwealth v. Mitchell***, 135 A.3d 1097, 1102 (Pa. Super. 2016) (internal citations and quotations omitted).

Accordingly,

two prongs must be satisfied for a defendant to be found guilty as an accomplice. First, there must be evidence that

- 9 -

the defendant intended to aid or promote the underlying offense. Second, there must be evidence that the defendant actively participated in the crime by soliciting, aiding, or agreeing to aid the principal. While these two requirements may be established by circumstantial evidence, a defendant cannot be an accomplice simply based on evidence that he knew about the crime or was present at the crime scene. There must be some additional evidence that the defendant intended to aid in the commission of the underlying crime, and then did or attempted to do so. With regard to the amount of aid, it need not be substantial so long as it was offered to the principal to assist him in committing or attempting to commit the crime.

*Murphy*, 844 A.2d at 1234 (internal citations and quotations omitted).

Moreover, with respect to conspirator liability, our Supreme Court has held:

To convict a defendant of conspiracy, the trier of fact must find that: (1) the defendant intended to commit or aid in the commission of the criminal act; (2) the defendant entered into an agreement with another (a "co-conspirator") to engage in the crime; and (3) the defendant or one or more of the other co-conspirators committed an overt act in furtherance of the agreed upon crime. The essence of a criminal conspiracy [] is the agreement made between the co-conspirators.

As with accomplice liability, "[m]ere association with the perpetrators, mere presence at the scene, or mere knowledge of the crime is insufficient" to establish that a defendant was part of a conspiratorial agreement to commit the crime. There needs to be some additional proof that the defendant intended to commit the crime along with his [co-conspirator]. Direct evidence of the defendant's criminal intent or the conspiratorial agreement, however, is rarely available. Consequently, the defendant's intent as well as the agreement is almost always proven through circumstantial evidence, such as by the relations, conduct or circumstances of the parties or overt acts on the part of the co-conspirators.

- 10 -

***Commonwealth v. Murphy***, 844 A.2d at 1238 (internal quotations and citations omitted).

An *en banc* panel of this Court has declared:

> Once there is evidence of the presence of a conspiracy, conspirators are liable for acts of co-conspirators committed in furtherance of the conspiracy. Even if the conspirator did not act as a principal in committing the underlying crime, he is still criminally liable for the actions of his co-conspirators taken in furtherance of the conspiracy.
>
> The general rule of law pertaining to the culpability of conspirators is that each individual member of the conspiracy is criminally responsible for the acts of his [co-conspirators] committed in furtherance of the conspiracy. The co-conspirator rule assigns legal culpability equally to all members of the conspiracy. All co-conspirators are responsible for actions undertaken in furtherance of the conspiracy regardless of their individual knowledge of such actions and regardless of which member of the conspiracy undertook the action.
>
> The premise of the rule is that the conspirators have formed together for an unlawful purpose, and thus, they share the intent to commit any acts undertaken in order to achieve that purpose, regardless of whether they actually intended any distinct act undertaken in furtherance of the object of the conspiracy. It is the existence of shared criminal intent that is the *sine qua non* of a conspiracy.

***Commonwealth v. Lambert***, 795 A.2d 1010, 1016–1017 (Pa. Super. 2002) (*en banc*).

Viewing the evidence in the light most favorable to the Commonwealth, the evidence establishes that: Appellant lured N.B. to an ambush under the false pretense of ordering a pizza; when N.B. showed up to deliver the pizza, one of Appellant's co-conspirators came up behind N.B.,

held a gun to N.B.'s head, and demanded money on behalf of his group;[5] Appellant took the money from N.B.'s pocket while the one co-conspirator held a gun to N.B.'s head and while another co-conspirator circled N.B. with a visible gun in hand; Appellant's co-conspirator shot N.B. in the face; after the co-conspirator shot N.B. in the face, N.B. struggled for the gun and heard the gunman shout "stop, come back and help me;" and, when N.B. finally succumbed to his injuries and "fell asleep" on the curb, Appellant's co-conspirator "rummage[ed] through [N.B.'s] vehicle [and ran] away."

This evidence is sufficient to prove that Appellant and his two co-conspirators entered into an agreement to lure N.B. to a specific location, in order to rob and then shoot N.B. Indeed, the jury found Appellant guilty of conspiracy to commit aggravated assault. *See* N.T. Trial, 2/27/14, at 423. Therefore, Appellant is responsible for the commission of the offense, which was the object of the conspiracy. *Lambert*, 795 A.2d at 1016–1017 ("All co-conspirators are responsible for actions undertaken in furtherance of the conspiracy regardless of their individual knowledge of such actions and regardless of which member of the conspiracy undertook the action").

Further, the evidence demonstrates that, at all times, Appellant intended to – and did, in fact – act as the accomplice of the individual who

_____

[5] N.B. testified that the gunman told him "**we** want your dough." N.T. Trial, 2/25/14, at 82-83 (emphasis added).

shot N.B. Indeed, Appellant was the individual who telephoned Domino's, set up the ambush, acted as the front-man for the ruse, robbed N.B. of his money, and stood in front of N.B. until Appellant's accomplice finally shot N.B. in the face. There is simply no merit to Appellant's claim that the evidence "established that the shooter acted alone and independent of any other alleged assailant." Appellant's Brief at 25-26. Rather, the evidence demonstrates that Appellant intended to and did, in fact, aid the principal in causing N.B. serious bodily injury "under circumstances manifesting extreme indifference to value of human life." 18 Pa.C.S.A. § 2702(a)(1); **see also** 18 Pa.C.S.A. § 2701(a)(1). Appellant's first two claims on appeal thus fail.

For Appellant's third claim on appeal, Appellant argues that the evidence was insufficient to support his robbery and theft by unlawful taking convictions. According to Appellant, "there was insufficient evidence to establish that [Appellant] deprived [N.B.] of any property as required by 18 Pa.C.S.A. § 3701 and § 3921 [because] no evidence was presented to support the conclusion that [Appellant] had taken anything from [N.B.] during the alleged incident." Appellant's Brief at 28.

Appellant's claim immediately fails, as N.B. specifically testified that, during the robbery, Appellant reached into his pocket and took $15.00 from N.B.'s person. N.T. Trial, 2/25/14, at 84-86 (N.B. testified that Appellant was "the person in the red hoody that [N.B.] described, the person who [N.B.] had [his] initial contact with and the person that went through

[N.B.'s] pocket and took that $15[.00]").  Therefore, Appellant's third claim on appeal fails.

Fourth, Appellant contends that the evidence was insufficient to support his conspiracy convictions because:  1) "insufficient evidence was presented at trial to establish [Appellant's] presence at the scene" and 2) "the testimony presented at trial was insufficient to establish an agreement between [Appellant] and any of the alleged perpetrators."  Appellant's Brief at 31-32.

Appellant's first sub-claim fails because N.B. testified that Appellant was present at the scene and that Appellant, in fact, facilitated and participated in the entire ambush, robbery, and shooting.  Therefore, the evidence was sufficient to prove Appellant's presence at the scene.

Appellant's second sub-claim – that there was insufficient evidence to prove an agreement between Appellant and his co-conspirators – likewise fails.  As noted above,

> Direct evidence of the defendant's criminal intent or the conspiratorial agreement . . . is rarely available. Consequently, the defendant's intent as well as the agreement is almost always proven through circumstantial evidence, such as by the relations, conduct or circumstances of the parties or overt acts on the part of the co-conspirators.

*Murphy*, 844 A.2d at 1238.

As we already explained, in the case at bar, the circumstantial evidence is sufficient to prove that Appellant and his two co-conspirators

entered into an agreement to rob and shoot N.B. ***See supra*** at **11-12. Therefore, Appellant's fourth claim on appeal fails.

Finally, Appellant claims that the verdict was against the weight of the evidence because "it is contrary to justice to believe that the jury found credibility in the testimony from [N.B.] identifying Appellant as the perpetrator." Appellant's Brief at 6 and 16-22. This claim fails.

As our Supreme Court explained:

> A motion for a new trial based on a claim that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice. It has often been stated that a new trial should be awarded when the [factfinder's] verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail.
>
> An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court:
>
>> Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence*.* Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for

- 15 -

granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

This does not mean that the exercise of discretion by the trial court in granting or denying a motion for a new trial based on a challenge to the weight of the evidence is unfettered. In describing the limits of a trial court's discretion, [the Pennsylvania Supreme Court has] explained:

The term discretion imports the exercise of judgment, wisdom and skill so as to reach a dispassionate conclusion within the framework of the law, and is not exercised for the purpose of giving effect to the will of the judge. Discretion must be exercised on the foundation of reason, as opposed to prejudice, personal motivations, caprice or arbitrary actions. Discretion is abused where the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill-will.

*Commonwealth v. Clay*, 64 A.3d 1049, 1055 (Pa. 2013) (internal citations, quotations, and emphasis omitted).

On appeal, Appellant claims that the jury's verdict was against the weight of the evidence because: when N.B. first parked on Birch Street, he "could not have seen Appellant sufficiently enough to be able to affirmative[ly] identify him as the perpetrator due to [three parked cars] . . . in his line of sight . . . [and at a] distance of at least 20 feet;" when N.B. approached Appellant, N.B. "could not have seen Appellant sufficiently enough to be able to affirmative[ly] identify him as the perpetrator because it was 9:00 p.m. on a winter's night and the area was poorly lit;" and, "the

- 16 -

description [N.B.] gave of his assailant differs drastically from the description presented of Appellant's appearance on the night of the offense." Appellant's Brief at 6 and 18-22; Appellant's Rule 1925(b) Statement, 5/9/17, at 1-2.

Appellant's claim fails. As the trial court explained:

> The weight of the evidence clearly demonstrates that the identification of Appellant was reliable. Appellant was identified by the victim in a photo array. Additionally, the victim provided an in-court identification of Appellant. The victim's identification was credible because Appellant and the victim stood right next to each other in good lighting, when Appellant robbed him. Also, through circumstantial evidence, cell phone records linked Appellant to the crime. The cell phone used to call [Domino's] was also used to call two individuals, who were later shown to have familial and Facebook connections to Appellant. As such, the guilty verdicts, when weighed against the relevant law and against the facts as elucidated above, do not reveal any partiality, prejudice, bias or ill will, nor do the verdicts shock one's sense of justice.

Trial Court Opinion, 6/23/17, at 5.

We agree with the learned trial court's cogent analysis and conclude that the trial court did not abuse its discretion when it denied Appellant's weight of the evidence claim. Accordingly, Appellant's final claim on appeal fails.

Judgment of sentence affirmed.  Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/4/2018