J-S50003-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DOUGLAS LOCKETT | : | |
| | : | |
| Appellant | : | No. 1194 WDA 2018 |

Appeal from the Judgment of Sentence Entered July 16, 2018
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s):  CP-02-CR-0000680-2017

BEFORE:   LAZARUS, J., MURRAY, J., and COLINS, J.[*]

MEMORANDUM BY LAZARUS, J.:                    **FILED SEPTEMBER 13, 2019**

Douglas Lockett appeals from his judgment of sentence, entered in the Court of Common Pleas of Allegheny County, following his conviction for second-degree (felony) murder,[1] robbery (serious bodily injury),[2] criminal use of a communication facility[3] and conspiracy (robbery).[4]  After careful review, we affirm.

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S § 2502(b).

[2] 18 Pa.C.S. § 3701(a)(1)(i).

[3] 18 Pa.C.S. § 7512(a).

[4] 18 Pa.C.S. § 903.

The victim, a seventeen-year-old female, was shot and killed at 3:30 p.m. on September 17, 2016. Two days prior to the shooting, the victim and her twin brother decided to arrange to sell what she believed to be a half kilogram of cocaine.[5] Steven Cansler, the victim's high school classmate, acted as the middle-man for the alleged transaction. Cansler contacted Lockett, who expressed an interest in buying the narcotics from the victim. Lockett, Cansler, the victim, and the victim's brother communicated with each other for two days via text messages and FaceTime to arrange a meeting near the victim's residence.

On the early morning hours of September 17, 2016, police officers responded to a notification that shots had been fired near the intersection of Belmar and Upland Streets in the Homewood section of the City of Pittsburgh. When the officers arrived at the location, they found the victim nearby lying face down at the bottom of a hill; the victim was pronounced dead at the scene. An autopsy determined the victim's cause of death was a perforating gunshot wound to the chest. Investigators found a pink duffle bag near the victim, which contained a baggie with suspected crack cocaine.[6] A semi-automatic 9-millimeter (mm) Ruger pistol was found next to the victim. A white iPhone, later determined to belong to Lockett, spent 9-mm shell casings,

_____

[5] The victim's brother testified that the victim had come into possession of a large amount of what she believed to be cocaine and that his sister had stolen the drugs.

[6] The suspected narcotics tested negative for any controlled substance.

and a spent 9-mm bullet were also found at the scene. Ballistic evidence established that three weapons were discharged during the incident, a Ruger P95 9-mm semi-automatic pistol, a Taurus 9-mm Millennium pistol, and a .38/.357 caliber revolver. An expert determined that three of the 9-mm casings matched each other and had been fired from the Ruger pistol found next to the victim's body.

After the incident, the victim's brother gave officers access to the contents of his cell phone and identified Cansler and Lockett in Facebook photos. Police interviewed Cansler, who provided information about Lockett and the incident, but identified another individual as the actual shooter. Further investigation revealed that Cansler had fabricated the name of the alleged shooter; however, a third unnamed person, later suspected to be Cansler's brother, was also involved in the incident. Cansler gave the police consent to download the contents of his cell phone; based on the new information found in Cansler's phone, the police interviewed him a second time. Cansler admitted to the police it was Lockett's intention to rob the victim of her drugs, that he knew Lockett owned a Taurus Millenium pistol, and that Lockett had the pistol in his possession when he went to meet the victim. Cansler's phone data also revealed that Lockett never actually intended to conduct a drug transaction.[7] Text message information contained in the

---

[7] Cansler admitted to the police that Lockett and a third party intended to rob the victim because they did not have enough money to purchase the drugs. N.T. Jury Trial, 4/11/18, at 479, 496.

various cell phones belonging to Cansler, the victim's brother, and Lockett corroborated the physical evidence and aided officers in creating a timeline of events leading to the victim's homicide.

Although an arrest warrant was issued for Lockett shortly after the murder, Lockett was not apprehended until November 7, 2016, in Michigan, having taken a Greyhound bus from Pittsburgh to Detroit on October 10, 2016. In April 2018, Lockett was tried before a jury. At trial, Cansler recanted his prior statements to police and testified that Lockett had told him he had the money to purchase the drugs from the victim, denied that any robbery occurred and, instead, alleged that it was "just a deal that went wrong." N.T. Jury Trial, 4/11/18, at 424. Ultimately, the jury found Lockett guilty of the above-stated offenses. On July 16, 2018, the trial court sentenced Lockett to life imprisonment for the murder conviction, followed by a consecutive term of 5-10 years in prison for conspiracy. Lockett filed a timely notice of appeal and court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Lockett presents the following issues for our consideration:

(1) Was the evidence presented insufficient as a matter of law to sustain the convictions for [s]econd-[d]egree [m]urder and [r]obbery insofar as the Commonwealth failed to establish that [] Lockett intended or attempted to commit a theft, or that he engaged in conduct as a principal or an accomplice in the perpetration of a robbery?

(2) Was the evidence presented insufficient as a matter of law to establish that [] Lockett conspired to commit a robbery, insofar as the Commonwealth failed to prove beyond a reasonable doubt that he intended to commit a robbery or conspired with another to do so?

Appellant's Brief, at 6.

Lockett claims that the evidence was insufficient to find him guilty of second-degree murder and robbery where he merely intended to purchase drugs from the victim, and where an alleged unknown third person acted independently to rob the victim or shot the victim in self-defense. We disagree.

> A determination of evidentiary sufficiency presents a question of law. As such, the appellate court's standard of review is *de novo* and its scope of review is plenary. In reviewing the sufficiency of the evidence, we must determine whether the evidence admitted at trial and all reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, were sufficient to prove every element of the offense beyond a reasonable doubt. The facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. It is within the province of the fact-finder to determine the weight to be accorded to each witness's testimony and to believe all, part, or none of the evidence. The Commonwealth may sustain its burden of proving every element of the crime by means of wholly circumstantial evidence. Moreover, as an appellate court, we may not re-weigh the evidence and substitute our judgment for that of the fact-finder.

***Commonwealth v. Russell***, 209 A.3d 419, 426 (Pa. Super. 2019) (citations omitted).

Second-degree murder is defined in our Crimes Code as "[a] criminal homicide . . . committed while [the] defendant was engaged as a principal or an accomplice in the perpetration of a felony." 18 Pa.C.S. § 2502(b). Moreover, a person is guilty of robbery under section 3701(a)(1)(i) "if, in the course of committing a theft, he [] inflicts serious bodily injury upon another[.]" 18 Pa.C.S. § 3701(a)(1)(i). Finally, a person is guilty of

conspiracy with another person or persons to commit a crime "if with the intent of promoting or facilitating its commission he:

> (1)    agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime; or
>
> (2)    agrees to aid such other person or persons in the planning or commission of such crime or an attempt at solicitation to commit such crime.

18 Pa.C.S. § 903.

After reviewing the certified record, relevant case law, and the parties' briefs, we find that the trial court properly disposed of Lockett's sufficiency issues on appeal. Specifically, the evidence established that Lockett: conspired with Cansler to rob the victim during the proposed drug transaction; was closely associated with Cansler; had knowledge of the commission of the crime; was present at the scene and participated in the object of the conspiracy, i.e., robbery; was linked to one of the guns fired multiple times at the crime scene; and fled to another state shortly after the shooting.[8]  **See** Trial Court Opinion, 1/17/19, at 14.  Accordingly, we rely upon the opinion authored by the Honorable Edward J. Borkowski to affirm Lockett's judgment of sentence.  We instruct the parties to attach a copy of Judge Borkowski's decision in the event of further proceedings in the matter.

---

[8] "When a person commits a crime, knows that he is wanted therefor, and flees or conceals himself, such conduct is evidence of consciousness of guilt, and may form the basis in connection with other proof from which guilt may be inferred." **Commonwealth v. Babbs**, 499 A.2d 1111, 1113 (Pa. Super. 1985), citing **Commonwealth v. Coyle**, 203 A.2d 782, 789 (Pa. 1964).

- 6 -

Judgment of sentence affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date:  9/13/2019



ORIGINAL
Criminal Division
Dept Of Court Records
Allegheny County, PA

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY,
PENNSYLVANIA

COMMONWEALTH OF PENNSYLVANIA,    CRIMINAL DIVISION

APPELLEE,

V.

DOUGLAS LOCKETT,                 CC NO.: 201700680

APPELLANT.

1194 WDA 2018

**OPINION**

FILED BY:

THE HONORABLE
EDWARD J. BORKOWSKI

COPIES TO:
Susan Swan, Esq.
310 Grant Street, Suite 823
Pittsburgh, PA 15219

Michael Streily, Esq.
Office of the District Attorney
401 Allegheny County Courthouse
436 Grant Street
Pittsburgh, PA 15219

# IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA

COMMONWEALTH OF PENNSYLVANIA,    CRIMINAL DIVISION

APPELLEE

       CC NO.: 201700680

V.

DOUGLAS LOCKETT,

    APPELLANT.

## OPINION

BORKOWSKI, J.

## PROCEDURAL HISTORY

Appellant was charged by criminal information (CC 201700680) with one count each of criminal homicide;[1] robbery;[2] criminal conspiracy (criminal homicide);[3] criminal conspiracy (robbery-inflict serious bodily injury);[4] and criminal use of a communication facility.[5]

On April 11-20, 2018, Appellant proceeded to a jury trial. At the conclusion of the trial, the jury found Appellant guilty of murder of the second degree,

---

[1] 18 Pa. C.S. §2501 (a).
[2] 18 Pa. C.S. §3701 (a)(1)(i).
[3] 18 Pa. C.S. §903.
[4] 18 Pa. C.S. § 903.
[5] 18 Pa. C.S. §7512(a).

2

robbery- serious bodily injury inflicted, criminal conspiracy (robbery-serious bodily injury inflicted), and criminal use of communication facility.

On July 16, 2018, Appellant was sentenced by the Trial Court as follows:

Count one: murder of the second degree – life imprisonment;

Count two: robbery (inflict serious bodily injury) – no further penalty;

Count three: criminal conspiracy (robbery- inflict serious bodily injury) – five to ten years imprisonment consecutive to count one; and

Count four: criminal use of communication facility – no further penalty;

This timely appeal follows.

## STATEMENT OF ERRORS ON APPEAL

Appellant's claims are set forth below exactly as Appellant presented them:

I. The evidence was insufficient as a matter of law to sustain the convictions of Second Degree Murder and Robbery insofar as the Commonwealth did not establish that Mr. Lockett intended or attempted to commit a theft, or that he engaged in conduct as a principal or an accomplice in the perpetration of a robbery; specifically, it did not prove beyond a reasonable doubt that Mr. Lockett facilitated, attempted or intended to commit a robbery that resulted in the victim's death. At most, the evidence showed that during a pre-arranged drug buy, a third person either independently decided to rob the victim, or shot at the victim in self-defense when the victim started shooting.

II. In addition, the evidence was insufficient to establish that Mr. Lockett conspired to commit a robbery, insofar as the Commonwealth failed to prove beyond a reasonable doubt that he intended to commit a robbery, or conspired with, or agreed with another person to commit a robbery.

3

> At most, the evidence showed that Mr. Lockett intended only to purchase illegal drugs from the victim; and that a third person either independently decided to rob the victim, or shot at the victim in self-defense when the victim started shooting

## FINDINGS OF FACT

On or around September 15, 2016, the victim, a seventeen-year-old female, obtained what she believed to be a half kilogram of cocaine. (T.T. 374).[6] The victim and her twin brother, Daijon McCall, decided to try to find someone who could buy the narcotics in order to make some money. Daijon McCall contacted Steven Cansler, a high-school classmate, who was willing to act as a middle man to find a buyer for the narcotics. (T.T. 374-379, 401). Cansler contacted Appellant regarding his interest in buying the narcotics, and Appellant indicated he was willing to purchase the narcotics. (T.T. 414). Appellant, Cansler, Daijon McCall, and the victim continued to communicate with each other throughout the next two days via text message and FaceTime regarding the potential drug deal. (T.T. 386, 389, 414 – 420). The parties eventually arranged a meeting approximately one hundred yards from McCall's residence in the Hill District of the City of Pittsburgh to complete the transaction. (T.T. 389-392). Appellant contacted McCall via FaceTime one last time to finalize the time of the meeting, and she remained on the

---

[6] The designation "T.T." followed by numerals refers to Trial Transcript, April 11-20, 2018.

4

phone with him up until the time of the shooting. (T.T. 390-392). Around 3:00 p.m. on the date of the incident, the victim left her residence with the narcotics and went to meet Appellant to complete the drug transaction. She was shot and killed at that time. (T.T. 395-399).

Officers were notified of shots fired at the intersection of Belmar Street and Upland Street in the Homewood section of the City of Pittsburgh by the ShotSpotter system. (T.T. 257-258). Eleven gunshots were recorded by the ShotSpotter system over a five second span. (T.T. 262). Officers arrived on the scene within minutes and were directed to the victim lying face down at the bottom of a hill. (T.T. 260-262). Homicide detectives were also called to respond to the shooting and arrived approximately ten minutes after the incident. (T.T. 115-116). Investigators who processed the scene found a pink duffle bag laying in close proximity to the victim which contained a Ziploc bag of suspected crack cocaine. (T.T. 130, 217, 246). The suspected narcotics were tested at the forensic laboratory of the Allegheny County Medical Examiner's office and tested negative for any controlled substance. (T.T. 219). One Ruger P95 9 mm pistol, found next to the victim, and a white iPhone were also recovered at the scene. (T.T. 227, 241, 247, 252). The white iPhone was later determined to belong to Appellant. (T.T. 276).

Ballistics evidence obtained at the crime scene established that three weapons were discharged in the course of the incident – a Ruger P95 9 mm semi-

5

automatic, a Taurus 9 mm Millennium pistol, and a .38/.357 caliber revolver. (T.T. 145, 153, 170-174, 179). Three of the shots fired were determined to have come from the Ruger P95 9 mm firearm found next to the victim, with an additional shell casing that malfunctioned and failed to extract from the firearm. (T.T. 243-245). Shell casings and bullet fragments consistent with a Taurus Millennium pistol, and a .38/.357 caliber revolver were also recovered from the scene. (T.T. 173-174, 179).

After the incident, Daijon McCall went to the police station and gave detectives access to the contents of his iPhone. He also proceeded to identify Cansler and Appellant in Facebook photos. (T.T. 401-402, 460). Based on the information provided by McCall, police interviewed Cansler on September 20, 2016. (T.T. 460-463, 465). Cansler agreed to speak with the police, waiving his Miranda rights and right to counsel. (T.T. 466). Cansler provided information to the police related to Appellant, but identified another individual by the name of "Don Don" as the actual shooter. As the investigation developed it became clear that "Don Don" was a fabrication. (T.T. 468). At the interview Cansler gave consent to download the contents of his phone. (T.T. 299, 421, 466). After reviewing the data contained in Cansler's phone, police interviewed him a second time where he admitted he knew it was Appellant's intention to rob the victim of the narcotics. (T.T. 423, 440-441, 444, 451-452). Cansler also told police that he

6

knew Appellant possessed a Taurus Millennium pistol. (T.T. 495). Additionally, the data from Cansler's phone captured communications indicating that the cost of the narcotics was irrelevant because he and Appellant only intended to rob the victim and never complete a money for drugs transaction. (T.T. 478-480). The text message information obtained from Daijon McCall's phone, Cansler's phone, and Appellant's phone (recovered at the crime scene) was used to corroborate the physical evidence by aiding law enforcement in creating a timeline of events. (T.T. 302-304).

Based on this information, an arrest warrant was issued for Appellant on October 25, 2016. (T.T. 508-509). On November 7, 2016 Appellant was arrested in Detroit, Michigan by the U.S. Marshals. (T.T 483-484). An additional phone belonging to Appellant was recovered at the time of his arrest, and its data was extracted. (T.T. 325-347, 498). Text messages between unknown individuals and Appellant placed on October 16, 2016, were recovered wherein Appellant responded to an inquiry for a Millennium pistol he was trying to sell or trade. (T.T. 501-502)

Dr. Todd Luckasevic, a forensic pathologist and associate medical examiner for the Allegheny County Medical Examiner's Office, performed an autopsy on the victim on September 18, 2016, and determined the cause of death to be a

7

perforating gunshot wound to the chest, and the manner of death to be homicide. (T.T. 83, 87-109).

Appellant was charged as noted hereinabove.

## DISCUSSION

### I.

Appellant alleges in his first claim that the evidence was insufficient as a matter of law to sustain Appellant's conviction for second degree murder and robbery alleging that the Commonwealth did not establish that Appellant intended or attempted to commit a theft, or that he engaged in conduct as either a principal or accomplice in the perpetration of a robbery. Specifically, Appellant alleges that the evidence did not prove beyond a reasonable doubt that Appellant facilitated, attempted, or intended to commit a robbery that resulted in the victim's death arguing that at most the evidence only established that during a pre-arranged drug deal, a third person independently decided to rob the victim or shot the victim in self-defense when the victim started shooting. This claim is without merit.

The standard of review for sufficiency of the evidence claims has been stated thusly:

> The standard we apply when reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the

8

fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced is free to believe all, part or none of the evidence.

*Commonwealth v. Gray*, 867 A.2d 560, 567 (Pa. Super. 2005). The statute with which Appellant was convicted defines murder in the second degree, commonly known as "felony murder" in Pennsylvania, as follows:

> A criminal homicide constitutes murder of the second degree when it is committed while defendant was engaged as a principal or an accomplice in the perpetration of a felony.

18 Pa.C.S.A. §2502(b). Additionally, robbery-inflict serious bodily injury is defined as follows:

> (1) A person is guilty of robbery if, in the course of committing a theft, he:
> (i) inflicts serious bodily injury upon another; [...]
> (2) An act shall be deemed 'in the course of committing a theft' if it occurs in an attempt to commit theft or in flight after the attempt or commission.

18 Pa.C.S.A §3701(a)(1)(i) and (2).

9

For purposes of second-degree murder as relevant to the case herein, the Crimes Code defines the perpetration of a felony as, "The act of the defendant in engaging in or being an accomplice in the commission of, or an attempt to commit, or flight after committing, or attempting to commit robbery." 18 Pa.C.S. § 2502(d).

Accomplice liability can be established by wholly circumstantial evidence. "Only the least degree of concert or collusion in the commission of the offense is sufficient to sustain a finding of responsibility as an accomplice. No agreement is required, only aid." *Commonwealth v. Knox*, 50 A.3d 732, 739 (Pa.Super.2012).

To wit, the evidence established that: (1) on or around September 15, 2016, the victim came into possession of what she believed to be a half kilogram of cocaine and she and her brother, Daijon McCall, decided to try to find someone who would buy the narcotics; (2) Daijon McCall contacted his classmate, Steven Cansler, to act as a middle man to find a buyer for the narcotics; (3) Cansler contacted Appellant regarding his interest in buying the narcotics, and the parties entered into an agreement to conduct what the victim believed to be a drug transaction; (4) on the day in question, Appellant contacted McCall via FaceTime finalizing the details of the supposed drug transaction; (5) the victim left her residence with the "narcotics" to conduct the alleged drug transaction and was ultimately shot and killed during that transaction; (6) officers arrived on the scene within minutes and found the victim lying face down at the bottom of a hill; (7)

10

investigators found a pink duffle bag laying in close proximity to the victim which contained a Ziploc bag of suspected crack cocaine at the scene which ultimately tested negative for a controlled substance; (8) one Ruger P95 9 mm pistol and a white iPhone were also recovered at the scene with it later being determined that said iPhone belonged to Appellant; (9) ballistics evidence established that three weapons were discharged in the course of the incident – a Ruger P95 9 mm semi-automatic, a Taurus 9 mm Millennium pistol, and a .38/.357 caliber revolver with three of the shots having been fired from the Ruger P95 9 mm firearm found next to the victim; (10) additionally, shell casings and bullet fragments consistent with a Taurus Millennium pistol and a .38/.357 caliber revolver were also recovered from the scene; (11) Daijon McCall went to the police station after the incident and gave detectives access to the contents of his iPhone, and as well identified Cansler and Appellant from Facebook photos as the individuals involved in the incident; (12) police interviewed Cansler, who provided information to the police related to Appellant but initially identified another individual as the shooter; (13) a subsequent investigation revealed that Cansler's allegation regarding another shooter was a fabrication; (14) Cansler ultimately admitted during a second police interview that he knew it was Appellant's intention to rob the victim of the narcotics and that he knew Appellant possessed a Taurus Millennium pistol; (15) text message information obtained from Daijon McCall's phone, Cansler's phone,

11

and Appellant's phone was used to corroborate the physical evidence by aiding law enforcement in creating a timeline of events; (16) Appellant fled to Michigan in the aftermath of the incident; (17) an arrest warrant was issued for Appellant on October 25, 2016 and he was ultimately arrested in Detroit, Michigan; and (18) the phone recovered from Appellant at the time of his arrest revealed text messages between unknown individuals and Appellant on October 16, 2016, wherein Appellant responded to an inquiry for a Millennium pistol he was trying to sell or trade. (T.T. 130,145, 153-154, 170-176, 179, 217, 227-241, 246-247, 260-262, 276, 302-304, 325-347, 374-379, 386, 389-392, 395-399, 401-402, 414-420, 423, 440-441, 444, 451-452, 460-466, 468,483-484, 495, 498, 501-502).

Viewing all the evidence presented at trial in a light most favorable to the Commonwealth and drawing all reasonable inferences in favor of the Commonwealth, the evidence clearly proved that Appellant intended to participate in the robbery of the victim and during the course of the robbery the victim was shot and killed. This clearly supports his convictions for second-degree murder and robbery. *See Commonwealth v. Mitchell*, 135 A.3d 1097, 1101(Pa.Super.2016)(holding that evidence was sufficient to support defendant's convictions for second degree murder, robbery, and conspiracy to commit robbery as the evidence established that the defendant aided his co-conspirator in the commission of the robbery and agreed to participate in the robbery, that is, the

12

defendant and his co-conspirator attempted to rob the victim and during the commission of the robbery the victim was shot and killed).

There is simply no evidence to support Appellant's "theory" that an unknown third person acted independently to rob the victim or shot the victim in self-defense. As such, this claim is without merit.

## II.

Appellant alleges in his second claim that the evidence was insufficient to establish that Appellant conspired to commit a robbery alleging that the Commonwealth failed to prove beyond a reasonable doubt that he intended to commit a robbery or conspired with, or agreed with another person to commit a robbery. The evidence only established that Appellant intended only to purchase illegal narcotics from the victim, and that a third person independently decided to rob the victim or shot the victim in self-defense. This claim is without merit.

The statute with which Appellant was convicted defines conspiracy as follows:

> A person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he:
> (1) agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime; or
> (2) agrees to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime.

13

18 Pa.C.S.A. §903.

In *Commonwealth v. Lambert*, 795 A.2d 1010, 1016 (Pa.Super.2002), the Superior Court set forth four factors to consider when determining if a conspiracy existed: (1) an association between the alleged coconspirators; (2) knowledge of the commission of the crime; (3) defendant's presence a the scene of the crime; and (4) in certain circumstances, that defendant participated in the object of the conspiracy. Further, the Superior Court has stated that: "The conduct of the parties and the circumstances surrounding such may create a web of evidence linking the accused to the alleged conspiracy beyond a reasonable doubt." *Commonwealth v. Devine*, 26 A.3d 1139, 1147 (Pa.Super. 2011).

Contrary to Appellant's assertion, the evidence established that Appellant conspired with Cansler to rob the victim during the proposed drug transaction on September 17, 2016. Specifically, the record established that Appellant and Cansler were closely associated with one another, Appellant had knowledge of the commission of the crime, was present at the scene, and participated in the object of the conspiracy. *See supra* at 10-12. Further, the record is simply devoid of any evidence to establish that an unknown third person independently acted to rob the victim or shot her in self-defense during the robbery. As such, the evidence was clearly sufficient to sustain the conviction of conspiracy to commit robbery, and Appellant's claim is without merit.

14

## CONCLUSION

Based upon the foregoing, the judgment of sentence imposed by this Court should be affirmed.

By the Court,

DATE: 1/17/19

_____, J.

Edward J. Borkowski

15